UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CAR-FRESHNER CORPORATION and JULIUS
SÄMANN LTD.,

                                    Plaintiffs,

                      v.

META PLATFORMS, INC.,

                                    Defendant.

**COMPLAINT AND
JURY DEMAND**

Civil Action No.
5:22-cv-1305 (MAD/ML)

Plaintiffs Car-Freshner Corporation ("CFC") and Julius Sämann Ltd. ("JSL") (collectively, "Plaintiffs"), by and through their undersigned counsel, Bond, Schoeneck & King, PLLC, for their Complaint against Defendant Meta Platforms, Inc. ("Meta" or "Defendant"), allege as follows:

## INTRODUCTION

1.     CFC, under license from JSL, manufactures the iconic LITTLE TREES air fresheners in Watertown, New York and DeWitt, Iowa, and markets and sells them in the Northern District of New York and across the United States.

2.     JSL owns the intellectual property associated with those famous LITTLE TREES air fresheners, including numerous federally registered trademarks. JSL is named after Julius Sämann, who created the first LITTLE TREES air fresheners in Watertown, New York, over 70 years ago.

3.     Meta owns and operates the highly interactive social media sites Facebook (facebook.com) and Instagram (instagram.com), which are widely used to sell, offer for sale, advertise, and/or distribute goods and services in the Northern

District of New York and across the United States, including the infringing goods at issue in this action.

4.     Meta owns and operates Facebook Marketplace as part of Facebook (facebook.com/marketplace), and actively promotes Facebook Marketplace as an online platform to buy and sell goods in this District and across the United States.

5.     According to Facebook's promotional materials, Facebook Marketplace offers "personalized shopping experiences" that "connect buyers with the brands and products that they're interested in."

6.     Infringing goods at issue in this action were purchased on Facebook Marketplace and delivered to this District in the last month.

7.     Meta has repeatedly and explicitly rejected Plaintiffs' specific notices of infringement and takedown requests. Meta is knowingly, willfully, and actively enabling, facilitating, and participating in the infringement and dilution of Plaintiffs' trademark rights on Facebook and Instagram.

8.     Meta refuses to stop this unlawful activity, despite having express notice that Plaintiffs' trademark rights are being infringed.

## JURISDICTION AND VENUE

9.     This action arises under the Lanham Trademark Act, as amended, 15 U.S.C. § 1051 *et seq.*, related state statutes, and the common law. This Court has jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1367(a).

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d).

2

## PARTIES

11.     CFC is a Delaware corporation that has its principal place of business at 21205 Little Tree Drive, Watertown, New York 13601.

12.     JSL is a Bermuda corporation that has its principal place of business at Victoria Place, 31 Victoria Street, Hamilton HM10, Bermuda.

13.     Upon information and belief, Meta is a Delaware corporation that lists its principal place of business as 1601 Willow Road, Menlo Park, California 94025.

14.     Upon information and belief, Meta is authorized to do business in New York, and maintains a substantial corporate office and thousands of employees in this state.

15.     According to data Meta disclosed last year, over 2.5 billion people use one or more of its platforms each day, more than 200 million businesses use its tools to reach customers, and over 1 billion people visit Facebook Marketplace each month.

## PLAINTIFFS' TREE DESIGN AND WORD MARKS

16.     For over 70 years, under license from JSL and its predecessors, CFC and its predecessors have used trademarks and corporate identifiers comprising or containing a distinctive abstract Tree design (the "Tree Design Marks"), as well as trademarks and corporate identifiers comprising or containing the term LITTLE TREES (the "LITTLE TREES Marks"), in connection with the manufacture, marketing, and sale of various products, including the world famous air fresheners featuring the distinctive abstract Tree design shape ("LITTLE TREES Air Fresheners"), as shown by the example below:

3



17.     Plaintiffs' and their respective predecessors' rights in the Tree Design Marks and the LITTLE TREES Marks date back to at least 1952 and 1957, respectively.

18.     For many years, under license from JSL and its predecessors, CFC and its predecessors have also used trademarks containing or comprising the term VANILLAROMA (the "VANILLAROMA Marks"), on and in connection with the manufacturing, marketing, and sale of air fresheners, including the world famous LITTLE TREES Air Fresheners.

19.     Plaintiffs' and their respective predecessors' rights in the VANILLAROMA Marks date back to at least 1983.

20.     An example of one of the LITTLE TREES Air Fresheners bearing the Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks is shown below:



21.     Due to the immense popularity of the Tree Design Marks, Plaintiffs have used those marks on a wide variety of consumer goods, including t-shirts and stickers, as shown by these examples:



22.     As a result of this long and extensive use on quality products and/or as corporate identifiers, the Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks are well known and well received.

23.     Plaintiffs and their respective predecessors have long used, and Plaintiffs continue to use, the Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks in many different fashions as source identifiers of high-quality goods, including on the packaging for their products, on the products themselves, in various forms of advertising and promotions for their products, and online. The Tree Design Marks also appear as the shape of the LITTLE TREES Air Fresheners.

5

24.     JSL is the owner of the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks, and CFC is a licensee of those marks for air fresheners and other products in the United States.

25.     JSL owns the following incontestable federal trademark registrations for the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks, among others:

| Mark | Registration No. | Registration Date | Goods |
|------|------------------|-------------------|-------|
|  | 719,498 | August 8, 1961 | Absorbent body impregnated with a perfumed air deodorant, in Class 5 |
|  | 1,781,016 | July 13, 1993 | Air freshener, in Class 5 |
|  | 1,791,233 | September 7, 1993 | Air freshener, in Class 5 |
|  | 2,741,364 | July 29, 2003 | Travel bags, in Class 18; Shirts, sweatshirts, t-shirts and caps, in Class 25 |
|  | 3,766,310 | March 30, 2010 | Air fresheners, in Class 5; pens and stickers, in Class 16; luggage tags, in Class 18; shirts and hats, in Class 25 |

15109158

| Mark | Registration No. | Registration Date | Goods |
|---|---|---|---|
| LITTLE TREES | 1,990,039 | July 30, 1996 | Air fresheners, in Class 5 |
| VANILLAROMA | 1,985,773 | July 6, 1996 | Air fresheners, in Class 5 |

26.    Pursuant to 15 U.S.C. § 1115(b), JSL's incontestable registrations for the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks noted above are conclusive evidence of the validity of the marks and their corresponding registrations, of JSL's ownership of those marks, and of JSL's exclusive right to use and license those marks in commerce.

27.    JSL also has potent common law trademark rights in and to its Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks by virtue of their longstanding and well-recognized use in commerce.

28.    Plaintiffs have spent, and continue to spend, significant time and money developing, testing, and promoting their goods sold under the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks, including the world-famous LITTLE TREES Air Fresheners.

29.    Plaintiffs' LITTLE TREES Air Fresheners are widely promoted in a variety of media, including on numerous websites and in printed promotional materials.

30.    Plaintiffs' LITTLE TREES Air Fresheners are marketed and sold throughout the United States on numerous websites, including on Facebook, and through a wide variety of different trade channels.

31.    Plaintiffs' LITTLE TREES Air Fresheners appear frequently on television, in movies, and in popular culture as a symbol of high-quality goods associated with a single source.

32.     Plaintiffs' LITTLE TREES Air Fresheners have become staples of American commerce, familiar to millions of consumers who encounter these products, the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks in a wide-variety of commercial contexts. Consumers know and recognize the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks as designating products of the highest and most reliable quality emanating from a single source.

33.     The Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks are non-functional, arbitrary, and inherently strong source identifiers.

34.     As a result of their long and extensive promotion and use in association with high-quality products, Plaintiffs' Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks enjoy widespread public recognition. They have acquired tremendous goodwill and secondary meaning among the consuming public, which recognizes these marks as exclusively associated with a single source.

35.     Plaintiffs' Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks are famous throughout the United States and have enjoyed such fame since long prior to Defendant's infringing and diluting activities complained of herein.

## DEFENDANT'S INFRINGEMENT OF PLAINTIFFS' FAMOUS TREE DESIGN MARKS, LITTLE TREES MARKS, AND VANILLAROMA MARKS

36.     Upon information and belief, air fresheners, t-shirts, and stickers that use marks confusingly similar to Plaintiffs' famous Tree Design Marks, LITTLE TREES Marks, and/or VANILLAROMA Marks (the "Infringing Products") have been advertised, offered for sale, sold, and/or distributed in this District and throughout the United States, without authorization from Plaintiffs, on Facebook and Instagram.

37.     These Infringing Products use spurious marks identical with, or substantially indistinguishable from, Plaintiffs' famous Tree Design Marks.

### The Infringing Air Fresheners

38.     The Infringing Products complained of herein include air fresheners (the "Infringing Air Fresheners") that have been offered for sale and sold on Facebook Marketplace.

39.     Images taken from a Facebook Marketplace listing for the Infringing Air Fresheners appear immediately below:

 

40.     The tree designs that have been used on the packaging for, and as the shape of, these Infringing Air Fresheners, as sold on Facebook Marketplace, are spurious marks identical with, or substantially indistinguishable from, Plaintiffs' Tree Design Marks.

41.     For example, the following is a photograph of Infringing Air Fresheners, purchased on Facebook Marketplace, on either side of an authentic LITTLE TREES Air Freshener manufactured and sold by CFC under license from JSL:

15109158



42.     In addition, as shown in the images above that were taken from the Facebook Marketplace listing, the packaging for these Infringing Air Fresheners states "Little Trees: 6 PCS," and the packaging for some is labeled "Vanillaroma."

43.     Use of the fragrance name "Vanillaroma" in connection with the Infringing Air Fresheners is confusingly similar to Plaintiffs' famous VANILLAROMA Marks.

44.     Use of the term "Little Trees" in connection with the Infringing Air Fresheners is confusingly similar to Plaintiffs' famous LITTLE TREES Marks.

45.     On November 9, 2022, a set of these Infringing Air Fresheners was sold to a customer on Facebook Marketplace for delivery to an address in Jefferson County, New York.

46.     The Facebook Marketplace page on which the listing for the Infringing Air Fresheners appeared also included "Today's picks" from Facebook Marketplace of items and real estate available for purchase or rent in and around Watertown, New York.

10

15109158

47.   The Facebook Marketplace listing for the Infringing Air Fresheners invited the customer to purchase the Infringing Air Fresheners by clicking a "Buy Now" button that appeared in the listing.

48.   After the customer clicked the "Buy Now" button, Facebook Marketplace requested that the customer input certain information, including a delivery address.

49.    After the customer input the information requested by Facebook Marketplace, specifying a delivery address in Jefferson County, New York, the customer was taken to a Facebook Marketplace "checkout" page.

50.   The Facebook Marketplace checkout page confirmed that the Infringing Air Fresheners were the product being purchased.

51.   The Facebook Marketplace checkout page included an image of the Infringing Air Fresheners in the tree design shape pictured above that is identical with, or substantially indistinguishable from, Plaintiffs' Tree Design Marks.

52.   The Facebook Marketplace checkout page confirmed that the Infringing Air Fresheners would be delivered to the address in Jefferson County, New York, that had been specified by the customer.

53.   The Facebook Marketplace checkout page stated that the purchase was "Covered by Purchase Protection."

54.   Upon information and belief, customers can seek refunds directly from Meta for purchases "Covered by Purchase Protection."

55.   The Facebook Marketplace checkout page listed what the customer was being charged for the item being purchased, shipping, and estimated tax.

11

56.     Upon information and belief, Meta calculated and collected New York State sales tax from the customer at checkout.

57.     The next day, on November 10, 2022, the customer received an email from Facebook (commerce-no-reply@support.Facebook.com) with tracking information for the order.

58.     Facebook's email to the customer advised that "[o]rders are typically shipped in 3 – 5 days" and confirmed that the order was being shipped to the address in Jefferson County, New York, that the customer had specified when placing their order.

59.     Facebook's email to the customer provided a link to the "order status page" on facebook.com and "recommended[ed] using that link to see the most up to date tracking info."

60.     Facebook's email to the customer also contained links to "Get Help With Your Order" and to "Learn More About Purchasing on Facebook."

61.     The email was signed "The Facebook Marketplace Team."

62.     At the very bottom of the email appeared the address for "Community Support" at "Meta Platforms, Inc." and the statement: "This message was sent to [the customer's email address] about a recent purchase on Facebook."

63.     The Infringing Air Fresheners were subsequently delivered to the specified address in this District on November 17, 2022.

64.     Upon information and belief, Meta retained at least part of the purchase price from the sale of these Infringing Air Fresheners as its "selling fee."

12

## The Infringing T-Shirts and Stickers

65.     The Infringing Products complained of herein also include t-shirts and stickers that have been advertised and offered for sale on Facebook and Instagram (the "Infringing T-Shirts and Stickers").

66.     Images of the Infringing T-Shirts and Stickers, taken from Facebook and Instagram, appear immediately below:

 

67.     The tree designs used on the Infringing T-Shirts and Stickers, as pictured above, are spurious marks identical with, or substantially indistinguishable from, Plaintiffs' Tree Design Marks, as shown by this comparison:

 



JSL's Tree Design Mark
Registration No.
<u>2,741,364</u>

Tree Design Used on the
Infringing T-Shirts and
<u>Stickers</u>

68.     Facebook and Instagram posts advertising and offering these Infringing T-Shirts and Stickers for sale have included such words and phrases as "NEW!,"

13

"RESTOCK!," "Get them before they're gone!," "Feeling fresh," "Fresh Print!," "now available," and "They sold out fast last time so don't wait!," along with an active link to the seller's commercial website where customers can shop.

<u>Meta's Willful Disregard of Plaintiffs' Trademark Rights</u>

69.     Meta has refused to take down postings for the Infringing Products on Facebook and Instagram, despite repeated notices of infringement and takedown requests submitted on Plaintiffs' behalf using the very "Trademark Report Form" that Meta directs trademark holders to use to report infringements of their rights on Meta's platforms.

70.     The Infringing Air Fresheners were purchased from a listing on Facebook Marketplace after Facebook explicitly rejected Plaintiffs' request to take that very listing down.

71.     On November 9, 2022, Trademark Report Form #1838876116469238 ("TMR-9238") was submitted to Facebook, on Plaintiffs' behalf, specifically identifying the Infringing Air Fresheners listing, supplying specific information concerning JSL and its registered trademarks, and explaining the infringement.

72.     On November 9, 2022, Facebook responded to TMR-9238 by explicitly refusing to take down the Infringing Air Fresheners listing.

73.     Similarly, Facebook and Instagram have explicitly refused to take down nine separate posts promoting the Infringing T-Shirts and Stickers.

74.     On October 18, 2022, Trademark Report Form #1488044498347718 ("TMR-7718") was submitted to Facebook, on Plaintiffs' behalf, specifically identifying three independent posts promoting the Infringing T-Shirts, supplying

14

specific information concerning JSL and its registered trademarks, and explaining the infringement.

75.   On October 18, 2022, Facebook responded to TMR-7718 by explicitly refusing to take down any of the three independent posts promoting the Infringing T-Shirts enumerated in TMR-7718.

76.   Similarly, on October 18, 2022, Trademark Report Form #817327455988713 ("TMR-8713") was submitted to Instagram, on Plaintiffs' behalf, specifically identifying a post promoting the Infringing T-Shirts, supplying specific information concerning JSL and its trademarks, and explaining the infringement.

77.   On October 18, 2022, Instagram responded to TMR-8713 by explicitly refusing to take down the post promoting the Infringing T-Shirts enumerated in TMR-8713.

78.   In response, Plaintiffs resubmitted evidence of JSL's U.S. Federal Trademark Registration, 3,766,310 which they had previously submitted and which expressly covers, *inter alia*, shirts, and implored Instagram to reconsider and remove the content reported in TMR-8713.

79.   Instagram again responded to TMR-8713 on October 18, 2022 by explicitly refusing to take down the post promoting the Infringing T-Shirts enumerated in TMR-8713.

80.   In response, Plaintiffs again resubmitted evidence of JSL's U.S. Federal Trademark Registration 3,766,310 and implored Instagram to reconsider and remove

the content reported in TMR-8713, but to no avail. Instagram simply ceased to respond.

81.     Also on October 18, 2022, Trademark Report Form #1158362785069460 ("TMR-9460") was submitted to Instagram, on Plaintiffs' behalf, specifically identifying three independent posts promoting the Infringing T-Shirts and one post promoting the Infringing Stickers, supplying specific information concerning JSL and its registered trademarks, and explaining the infringement.

82.     On October 18, 2022, Instagram responded to TMR-9460 by explicitly refusing to take down any of the three independent posts promoting the Infringing T-Shirts or the post promoting the Infringing Stickers enumerated in TMR-9460.

83.     In response, Plaintiffs resubmitted evidence of JSL's U.S. Federal Trademark Registration 3,766,310, which expressly covers, *inter alia*, shirts and stickers, and implored Instagram to reconsider its position and remove the content reported in TMR-9460.

84.     Instagram again responded to TMR-9460 by explicitly refusing to take down the posts promoting the Infringing T-Shirts or the post promoting the Infringing Sticker enumerated in TMR-9460.

85.     In response, Plaintiffs again resubmitted evidence of JSL's U.S. Federal Trademark Registration 3,766,310 and implored Instagram to reconsider and remove the content reported in TMR-9460, but to no avail. Instagram simply ceased to respond.

16

86.     To this day, the Infringing Air Fresheners, Infringing T-Shirts and Infringing Stickers are all still posted on Facebook and/or Instagram.

87.     What is more, Facebook has been on express notice of Plaintiffs' rights in the Tree Design Marks since at least 2008, when it unlawfully used their Tree Design Marks for its "Facebook Gifts" program without authorization. On February 26, 2008, Plaintiffs' representatives contacted Facebook concerning this unauthorized use, and Facebook then removed the unauthorized use, both from its Facebook's Gifts page and from its members' profile pages.

88.     Plaintiffs have never given Meta or anyone else permission to use Plaintiffs' Tree Design Marks, LITTLE TREES Marks, or VANILLAROMA Marks in the sale or promotion of the Infringing Products.

89.     Use of the marks at issue in connection with the sale, offering for sale, distribution, and/or advertising of the Infringing Products has been and, if continued, is likely to cause confusion, mistake, or deception as to the source or sponsorship of the Infringing Products, and to mislead the public into believing the Infringing Products emanate from, are approved or sponsored by, are licensed by, or are in some way associated with Plaintiffs.

90.     Upon information and belief, Meta was aware of Plaintiffs' famous Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks prior to engaging in the conduct complained of herein, but nevertheless intentionally engaged in that conduct with disregard for Plaintiffs' rights, and continued to engage in that conduct even after it received express written complaints from Plaintiffs' representatives.

17

91.     Meta, by its acts complained of herein, has infringed the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks, diluted the unique commercial impression of the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks, unfairly competed with Plaintiffs in the marketplace, and otherwise unfairly used the reputation and goodwill of Plaintiffs to sell, offer for sale, advertise, and/or distribute the Infringing Products, which are not connected with, or authorized, approved, licensed, produced, or sponsored by, Plaintiffs.

92.     Meta's aforesaid acts have caused, and if not stopped, will continue to cause irreparable injury to Plaintiffs, for which they have no adequate remedy at law.

## CLAIMS FOR RELIEF

### CLAIM I
### COUNTERFEITING OF A REGISTERED
### TRADEMARK
### (Federal)

93.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 92 as if set forth herein.

94.     Meta has used spurious marks identical to, or substantially indistinguishable from, Plaintiffs' Tree Design Marks, in connection with the sale, offering for sale, and/or distribution of the Infringing Products.

95.     Meta has also supplied products and/or services to those whom it knew or had reason to know were engaging in such conduct.

96.     Meta's unlawful and improper actions, as set forth above, have been, and if continued, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, or sponsorship of the Infringing Products and falsely

mislead consumers into believing that the Infringing Products originate from, are affiliated or connected with, or are approved by, Plaintiffs.

97.     Meta's activities constitute a direct and/or contributory infringement of the Tree Design Marks in violation of the Lanham Act, 15 U.S.C. § 1114.

98.     Meta's acts have caused injury to Plaintiffs.

99.     Meta's acts of direct and/or contributory trademark counterfeiting in connection with the sale, offering for sale, and/or distribution of the Infringing Products entitle Plaintiffs to a treble award of Meta's profits, and Plaintiffs' recovery of their attorneys' fees under 15 U.S.C. § 1117(b).

100.    Meta's acts of direct and/or contributory trademark counterfeiting in connection with the sale, offering for sale, and/or distribution of the Infringing Products entitle Plaintiffs to an award of statutory damages per counterfeit mark per type of good sold, offered for sale, or distributed under 15 U.S.C. § 1117(c).

101.    Upon information and belief, Meta has acted willfully, so as to justify an award of statutory damages of $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed under 15 U.S.C. § 1117(c)(2).

102.    Meta's acts of direct and/or contributory trademark counterfeiting, if not stopped, will continue to cause Plaintiffs to sustain irreparable injury, for which they have no adequate remedy at law.

## CLAIM II
## INFRINGEMENT OF A REGISTERED
## TRADEMARK
### (Federal)

103.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 102 as if set forth herein.

104.    Meta's unlawful and improper actions, as set forth above, have been, and if continued, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, or sponsorship of the Infringing Products and to falsely mislead consumers into believing the Infringing Products originate from, are affiliated or connected with, or are approved by, Plaintiffs.

105.    Meta has also supplied products and/or services to those whom it knows or had reason to know were infringing Plaintiffs' Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks.

106.    Meta's activities constitute a direct and/or contributory infringement of the Tree Design Marks, the LITTLE TREES Marks, and the VANILLAROMA Marks in violation of the Lanham Act, 15 U.S.C. § 1114.

107.    Meta's acts have caused injury to Plaintiffs.

108.    Upon information and belief, Meta has engaged in these activities willfully, so as to justify a treble award of Meta's profits, and Plaintiffs' recovery of their attorneys' fees under 15 U.S.C. § 1117.

109.    Meta's acts of direct and/or contributory infringement, if not stopped, will continue to cause Plaintiffs to sustain irreparable injury, for which they have no adequate remedy at law.

## CLAIM III
## TRADEMARK INFRINGEMENT AND
## UNFAIR COMPETITION
### (Federal)

110.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 109 as if set forth herein.

111.     Meta's unlawful and improper actions, as set forth above, have been, and if continued, are likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of the Infringing Products, or to falsely mislead consumers into believing the Infringing Products originate from, are affiliated or connected with, or are approved by, Plaintiffs.

112.     Meta's activities constitute direct and/or contributory infringement of Plaintiffs' Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

113.     Meta's acts have caused injury to Plaintiffs.

114.     Upon information and belief, Meta has engaged in these activities willfully, so as to justify a treble award of Meta's profits, and Plaintiffs' recovery of their attorneys' fees under 15 U.S.C. § 1117.

115.     Meta's acts of direct and/or contributory infringement, false designation of origin, and unfair competition, if not stopped, will continue to cause Plaintiffs to sustain irreparable injury, for which they have no adequate remedy at law.

15109158

## CLAIM IV
## TRADEMARK DILUTION
### (Federal)

116.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 115 as if set forth herein.

117.    Plaintiffs are respectively the owner and licensee of the rights in and to the Tree Design Marks and the LITTLE TREES Marks that are distinctive and famous among the general consuming public in the United States, and have been famous since long before Meta engaged in the activities complained of herein.

118.    Meta's activities, as set forth above, have been, and if continued, are likely to dilute, impair, tarnish, and blur the distinctive quality of Plaintiffs' famous Tree Design Marks and LITTLE TREES Marks.

119.    Meta's activities constitute direct and/or contributory dilution of Plaintiffs' Tree Design Marks and LITTLE TREES Marks in violation of 15 U.S.C. § 1125(c).

120.    Meta's acts have caused injury to Plaintiffs.

121.    Upon information and belief, Meta has engaged in these activities willfully, so as to justify a treble award of Meta's profits, and Plaintiffs' recovery of their attorneys' fees under 15 U.S.C. § 1117.

122.    Meta's acts have caused substantial and irreparable injury to Plaintiffs and, in particular, to their valuable goodwill and the distinctive quality of their famous Tree Design Marks and LITTLE TREES Marks and, if not stopped, will continue to cause substantial and irreparable injury to Plaintiffs for which they have no adequate remedy at law.

22

15109158

## CLAIM V
## VIOLATION OF NEW YORK GENERAL
## BUSINESS LAW § 360-l

123.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 122 as if set forth herein.

124.    Meta's activities have been, and if continued, are likely to dilute Plaintiffs' distinctive Tree Design Marks, LITTLE TREES Marks, and VANILLAROMA Marks, in direct and/or contributory violation of Plaintiffs' rights under New York General Business Law § 360-l.

125.    Meta's violations of New York General Business Law § 360-l have caused injury to Plaintiffs.

126.    Meta's violations of New York General Business Law § 360-l have caused, and if not stopped, will continue to cause Plaintiffs to sustain irreparable harm, for which Plaintiffs have no adequate remedy at law.

## CLAIM VI
## TRADEMARK INFRINGEMENT AND
## UNFAIR COMPETITION
## (Common Law)

127.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 126 as if set forth herein.

128.    Meta's unlawful and improper actions, as set forth above, have been, and if continued, are likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of the Infringing Products, or to falsely mislead consumers into believing the Infringing Products originate from, are affiliated or connected with, or are approved by Plaintiffs.

23

15109158

129.   Meta's activities complained of herein constitute direct and/or contributory trademark infringement and unfair competition under New York State common law.

130.   Meta's aforesaid violations of New York State common law have caused injury to Plaintiffs.

131.   Meta's aforesaid violations of New York State common law, if not stopped, will continue to cause Plaintiffs to sustain irreparable injury, for which they have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Meta as follows:

A.   That Meta and its affiliates, officers, agents, servants, employees, successors, and assigns, and all persons in active concert or participation with them who receive actual notice of the injunction order, by personal service or otherwise, be enjoined, preliminarily and permanently, from:

1.   Any manufacture, production, sale, import, export, distribution, advertisement, promotion, display, or other exploitation of the Infringing Products;

2.   Any unauthorized use of Plaintiffs' Tree Design Marks, LITTLE TREES Marks, VANILLAROMA Marks, or any other marks, designs, products, designations, or displays confusingly similar thereto in connection with any goods or services; and

3.   Committing any other acts that directly or contributorily infringe or dilute Plaintiffs' Tree Design Marks, LITTLE TREES Marks, or VANILLAROMA Marks.

24

B.      Pursuant to 15 U.S.C. § 1118, that Meta deliver to Plaintiffs for destruction all units of the Infringing Products and all associated materials (including, without limitation, all advertisements, promotional materials, brochures, signs, displays, packaging, labels, and/or website materials) within its possession, custody, or control;

C.      Pursuant to 15 U.S.C. § 1116, that Meta file with the Court and serve on counsel for Plaintiffs, within thirty (30) days after the entry of final judgment, a report in writing and under oath setting forth in detail the manner and form in which it has complied with paragraphs A and B above;

D.      Pursuant to 15 U.S.C. § 1117(a), that Meta be directed to account to Plaintiffs for all gains, profits, and advantages derived from Meta's wrongful acts;

E.      Pursuant to 15 U.S.C. § 1117(a), Plaintiffs recover from Meta three times the amount of Meta's profits for the Infringing Products;

F.      Pursuant to 15 U.S.C. § 1117(b), that Plaintiffs recover from Meta three times Meta's profits for the Infringing Products;

G.      Pursuant to 15 U.S.C. § 1117(c), that Plaintiffs recover from Meta applicable statutory damages, if elected by Plaintiffs;

H.      Pursuant to 15 U.S.C. § 1117(a), that Plaintiffs recover from Meta their attorneys' fees and costs in the action;

I.      Pursuant to 15 U.S.C. § 1117(b), that Plaintiffs recover from Meta their attorneys' fees and costs in this action;

J.      That Plaintiffs recover prejudgment interest; and

15109158

K.      That Plaintiffs be awarded such other and further relief as the Court

may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated: December 6, 2022                       BOND, SCHOENECK & KING, PLLC

By:_____
            Louis Orbach (507815)
            Liza R. Magley (519849)
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Email: lorbach@bsk.com
Email: lmagley@bsk.com

*Attorneys for Plaintiffs Car-Freshner*
*Corporation and Julius Sämann Ltd.*

26

15109158