**KILPATRICK TOWNSEND & STOCKTON LLP**

William H. Brewster (520585)
R. Charles Henn Jr. (703461)
H. Forrest Flemming, III (703406)

The Grace Building
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAR-FRESHNER CORPORATION and JULIUS SÄMANN LTD., <br><br> *Plaintiffs*, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> *Defendant*. | No. 5:22-cv-1305 (MAD/ML) |
| META PLATFORMS, INC., <br><br> *Counterclaim-Plaintiff*, <br><br> v. <br><br> JULIUS SÄMANN LTD., <br><br> *Counterclaim-Defendant*. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION**
**FOR LEAVE TO AMEND THE COMPLAINT**

# TABLE OF CONTENTS

II.     INTRODUCTION ..................................................................................................1

III.   ARGUMENT .......................................................................................................3

   A.    Legal Standard for Motion for Leave to Amend ..............................................3

   B.    The FAC Fails to State a Claim for Copyright Infringement ...........................4

     1.   The FAC Fails to State a Claim for Direct Copyright Infringement ...........................4

     2.   The FAC Fails to State a Claim for Contributory Copyright Infringement.............11

       a.   The FAC Fails to Allege Facts Plausibly Showing Meta's Knowledge That the February Pina Colada Listing Was Infringing ......................................................12

       b.   The FAC Fails to Allege Facts Plausibly Showing That Meta Failed to Take Action Against the March Pina Colada Listing. ................................................................14

     3.   The FAC Fails to State a Claim for Vicarious Copyright Infringement....................18

   C.    The FAC Fails to State a Claim for Contributory Trademark Infringement ................20

     1.   The FAC Fails to Allege Meta's Contemporary Knowledge of the Listings ............20

     2.   The FAC Fails to Allege That Meta Declined to Take Action Against the  Additional Listings..........................................................................................................................22

III.   CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ........................................................................15

*ABKCO Music, Inc. v. Sagan*,
  50 F.4th 309 (2d Cir. 2022), *cert. denied,* 144 S. Ct. 77, 217 L. Ed. 2d 13
  (2023)...........................................................................................................4, 6

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ..............................................................18

*Azurite Corp. v. Amster & Co.*,
  52 F.3d 15 (2d Cir. 1995)..................................................................................3

*Business Casual Holdings LLC v. YouTube, LLC*,
  No. 22-3007-cv, 2023 WL 6842449 (2d Cir. Oct. 17, 2023) ...............11, 14, 15, 17

*Capitol Recs., Inc. v. MP3tunes, LLC*,
  821 F. Supp. 2d 627 (S.D.N.Y. 2011).................................................................19

*Car-Freshner Corp. v. Meta Platforms, Inc.*,
  2023 WL 7325109 (N.D.N.Y. Nov. 7, 2023) ........................................................2

*Cartoon Network LP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008)................................................................... *passim*

*Cook v. Meta Platforms Inc.*,
  2023 WL 6370891 (N.D. Cal. Jan. 4, 2023) .........................................................8

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ..........................................................................5, 9

*Field v. Google Inc.*,
  412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................11

*Friedl v. City of New York*,
  210 F.3d 79 (2d Cir. 2000)...............................................................................13

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
  206 F. Supp. 3d 869 (S.D.N.Y. 2016)..................................................................22

*Harrison v. Facebook, Inc.*,
  2019 WL 11343562 (N.D. Cal. July 2, 2019)........................................................8

*Hartmann v. Google LLC*,
    No. 20 CIV. 5778 (JPC), 2022 WL 684137 (S.D.N.Y. Mar. 8, 2022) ...................................19

*Helena Erectors, Inc. v. Trinity Indus., Inc.*,
    No. 84 Civ. 7034-CSH, 1987 WL 9698 (S.D.N.Y. Apr. 16, 1987)........................................13

*Highland Cap. Mgmt. LP v. Schneider*,
    607 F.3d 322 (2d Cir. 2010)..................................................................................................13

*J&J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc.*,
    17-cv-2196-ARR-CLP, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018)................................18

*Jones v. N.Y. State Div. of Mil. &Naval Affairs*,
    1997 WL 266765 (N.D.N.Y. May 7, 1997)...........................................................................3

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)..................................................................................................23

*King Spider LLC v. 884886 CH Store*,
    23-CV-3472(JMF), 2024 WL 3184674 (S.D.N.Y. June 26, 2024) ........................................21

*Krisko v. Marvel Ent., LLC*,
    473 F. Supp. 3d 288 (S.D.N.Y. 2020)....................................................................................14

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)..................................................................................................16

*Long v. Dorset*,
    854 F. App'x 861 (9th Cir. 2021) ....................................................................................10, 11

*Lopez v. Bonanza.com, Inc.*,
    No. 17 CIV. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019)..........................6, 11

*Nettis v. Levitt*,
    241 F.3d 186 (2d Cir. 2001), *overruled on other grounds by Slayton v. Am.
    Exp. Co.*, 460 F.3d 215 (2d Cir. 2006)..................................................................................13

*Nicklen v. Sinclair Broad. Grp., Inc.*,
    551 F. Supp. 3d 188 (S.D.N.Y. 2021).....................................................................................7

*Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*,
    No. 07 Civ. 6959(DAB), 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010) ................................23

*Okolita v. Amazon.com, Inc.*,
    No. 2:22-cv-00284-LEW, 2023 WL 4847259 (D. Me. July 28, 2023) ...................................6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ....................................................................................7, 8, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ...............................................................6, 7, 8, 19

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ...............................................................20

*Prepared Food Photos, Inc. v. Chicken Joes, LLC*,
    2024 WL 382529 (S.D.N.Y. Feb. 1, 2024) ......................................7

*Ranieri v. Adirondack Dev. Grp.*,
    LLC, 164 F. Supp. 3d 305 (N.D.N.Y. 2016) .....................................18

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ................................................4

*Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co.*,
    545 F. Supp. 3d 21 (W.D.N.Y. 2021) ..............................................13

*Stross v. Twitter, Inc.*,
    2022 WL 1843142 (C.D. Cal. Feb. 28, 2022) ...................................7, 9

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) .............................................................3

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) ...................................................... *passim*

*Trombetta v. Novocin*,
    2021 WL 6052198 (S.D.N.Y. Dec. 21, 2021) ...................................7

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012) ...............................................................17, 21

*White v. DistoKid*,
    22 Civ. 2205 (VEC) (GWG) 2024 WL 3195471 (S.D.N.Y. June 24, 2024) ....................14, 19

*Wolk v. Kodak Imaging Network, Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v.*
    *Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) ................................ *passim*

*Zahra v. Town of Southold*,
    48 F.3d 674 (2d Cir. 1995) ...............................................................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................1, 7, 13, 18

Plaintiffs Car-Freshner Corporation ("CFC") and Julius Sämann Ltd. ("JSL," and together with CFC, "Plaintiffs") seek leave to file a Fourth Amended Complaint ("FAC") against defendant Meta Platforms, Inc. ("Meta"). For the reasons stated below, the Court should deny Plaintiffs leave to amend their complaint because their proposed amendments would be futile.

## II.    INTRODUCTION

Following the Court's dismissal of Plaintiffs' direct trademark claims without leave to amend (Dkt. No. 26 at 42), Plaintiffs seek to amend their complaint (for a fourth time) to add three causes of action for *copyright* infringement and add to their existing allegations of contributory trademark infringement. This would significantly expand the scope of this action and require extensive new discovery if Plaintiffs' allegations were sufficiently pleaded. In fact, however, Plaintiffs' proposed amendments would be futile because Plaintiffs have failed to state claims for which relief may be granted under Rule 12(b)(6).

***First***, Plaintiffs fail to state a claim for direct copyright infringement because they have not plausibly alleged that Meta engaged in the requisite "volitional conduct." As the Second Circuit held in *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008), a party asserting *direct* copyright infringement must plead and prove that the defendant is the one "who actually 'makes' [the] copy." *Id.* at 131. Issuing a command to a computer system that "automatically obeys" does not suffice. *Id.* Here, Plaintiffs allege that *third parties*, not Meta, created the allegedly infringing products and uploaded photos of them to the Facebook Marketplace service, which automatically populated the allegedly infringing listings. This is not "volitional conduct." *See id.*

***Second***, Plaintiffs fail to state a claim for contributory copyright infringement because they have not plausibly alleged facts showing that Meta had actual knowledge of the alleged

1

infringement and failed to take action. Indeed, Plaintiffs' own allegations establish their acknowledgment that receiving notifications of claimed infringement was initially "outside the scope of [Meta's outside counsel's] representation of Meta," FAC ¶ 290, which defeats Plaintiffs' claims of actual knowledge. Further, Plaintiffs fail to plausibly allege facts that Meta failed to act expeditiously to disable access to the allegedly infringing material. Instead, Plaintiffs allege that a customer purchased the product at issue two days after Plaintiffs reported it. FAC ¶¶ 157, 297. A purported "delay" of two days in responding to a notification of claimed infringement is insufficient, as a matter of law, to support a claim for contributory copyright infringement. *See Car-Freshner Corp. v. Meta Platforms, Inc.*, 2023 WL 7325109, at *21 (N.D.N.Y. Nov. 7, 2023) (discussing *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2023 WL 6842449, at *2 (2d Cir. Oct. 17, 2023), in which the court found no contributory infringement following alleged delays of 3, 9, and 23 days).

*Third*, Plaintiffs fail to state a claim for vicarious copyright infringement because they have not plausibly alleged facts showing that Meta had the right and ability to control the alleged copyright infringement and received a direct and obvious financial benefit from it. On the first element, Plaintiffs rely on *ipse dixit*, arguing in a footnote that "Meta's right to stop or limit the infringement is not in dispute." (Dkt. No. 81-6 at 19 n.3.) This attorney argument is insufficient to support Plaintiffs' claims. On the second element, Plaintiffs allege only that Meta retained a "selling fee" from sales on Facebook Marketplace. Allegations of general benefit are insufficient, as a matter of law, to establish the requisite causal link between the fee and the *specific* infringement alleged. If "selling fees" were sufficient to create vicarious liability, every online platform enabling transactions between buyers and sellers would be subject to such liability. This is not the law. *See Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp. 2d 724, 748 (S.D.N.Y.

2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (finding that no direct financial benefit exists because "Defendants' profits are derived from the service they provide, not a particular infringement").

**Finally**, Plaintiffs fail to allege facts plausibly establishing Meta's contributory liability for the "additional [trademark] infringements" they seek to assert. (Dkt. No. 81-6 at 9.) To state a claim for contributory trademark infringement, Plaintiffs must allege facts plausibly showing that Meta had "contemporary knowledge of which particular listings are infringing" but continued to "supply its service to individuals who it knew or had reason to know were selling" the infringing goods. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010). As discussed above, Plaintiffs' notice to Meta's outside counsel cannot be imputed to Meta where counsel lacked authority to receive it. *See* FAC ¶¶ 149, 284, 290-291. In any event, Plaintiffs fail to allege that Meta "continued to supply" its services in connection with those listings.

For these reasons, and those stated below, the Court should deny Plaintiffs' motion for leave to amend as futile.

### III.   ARGUMENT

### A.   Legal Standard for Motion for Leave to Amend

"[It] is within the sound discretion of the district court whether to grant or deny leave to amend." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). District courts may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted). If a proposed amendment would not survive a motion to dismiss, then the amendment is futile, and leave should be denied. *See Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 19 (2d Cir. 1995); *Jones v. N.Y. State Div. of Mil. &Naval Affairs*, 1997 WL 266765, at *6 (N.D.N.Y. May 7, 1997) ("If the amended complaint is subject to dismissal, the

amendment is considered futile and will not be permitted.").

> **B.**     **The FAC Fails to State a Claim for Copyright Infringement**

The FAC asserts a claim for copyright infringement against Meta under three theories of liability: direct; contributory; and vicarious. As discussed in detail below, the FAC contains insufficient factual allegations to establish Meta's liability under any of those three theories. Plaintiffs' motion for leave to amend to assert a copyright claim against Meta therefore should be denied as futile.

> **1.**     **The FAC Fails to State a Claim for Direct Copyright Infringement**

Plaintiffs contend that Meta is directly liable for copyright infringement because Meta has violated Plaintiffs' "display" rights. (Dkt. No. 81-6 at 15.) But Plaintiffs' direct liability claim fails as a matter of law because the FAC fails to allege facts plausibly showing that Meta engaged in "volitional conduct" in displaying allegedly infringing images.

In the Second Circuit, "[d]irect liability requires 'volitional conduct' that 'causes' the copying or distribution." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321-22 (2d Cir. 2022) (emphasis added), *cert. denied,* 144 S. Ct. 77, 217 L. Ed. 2d 13 (2023). "That is, direct liability attaches only to the 'person who actually presses the button.'" *Id.* (citation omitted).

In their Motion, despite discussing Meta's "volitional conduct," Plaintiffs fail to direct the Court to the foundational Second Circuit decision on that issue, *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008). In *Cartoon Network*, the Second Circuit examined a line of cases originating in the Northern District of California in 1995 with *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 907 F. Supp. 1361 (N.D. Cal. 1995) ("*Netcom*"):

> In *Netcom*, a third-party customer of the defendant Internet service provider ("ISP") posted a copyrighted work that was automatically reproduced by the defendant's computer. The district court refused to impose direct liability on the ISP, reasoning that "[a]lthough copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is

merely used to create a copy by a third party."

*Cartoon Network*, 536 F.3d at 130 (quoting *Netcom*, 907 F. Supp. at 1370). The Second Circuit

adopted *Netcom*'s reasoning as "a particularly rational interpretation" of the Copyright Act. *Id.*

The court then held that "volitional conduct is an important element of direct liability," and that

"a significant difference exists between making a request to a human employee, who then

volitionally operates the copying system to make the copy, and issuing a command directly to a

system, which automatically obeys commands and engages in no volitional conduct." *Id.* at 131.

Thus, courts must look to "the volitional conduct that causes the copy to be made." *Id.* The

Second Circuit explained that, "[a]fter all, the purpose of any causation-based liability doctrine is

to identify the actor (or actors) whose 'conduct has been so significant and important to a cause

that [he or she] should be legally responsible.'" *Id.* at 132 (citation omitted).[1]

In *Cartoon Network*, the "only two instances of [allegedly] volitional conduct" were (1)

defendant Cablevision's "conduct in designing, housing, and maintaining a system that exists

only to produce a copy," and (2) "a customer's conduct in ordering that system to produce a copy

of a specific program." *Id.* The court held that neither could support a claim of direct copyright

infringement against Cablevision, which merely sold "access to a system that automatically[2]

produces copies on command." *Id.*

Here, the FAC fails to allege that Meta engaged in any "volitional conduct that cause[d]

---

[1] The *Cartoon Network* court also relied upon *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004), in which the Fourth Circuit held: "[A]n ISP ['internet service provider'] who owns an electronic facility that responds automatically to users' input is not a direct infringer." *Id.* at 550.

[2] This key aspect of the Second Circuit's *Cartoon Network* opinion invalidates Plaintiffs' argument that it makes no difference whether the display of allegedly infringing content on Facebook Marketplace was "automated." (Dkt. No. 81-6 at 17.)

the cop[ies] to be made." *See Cartoon Network*, 536 F.3d at 131. The FAC alleges that an

unnamed "seller" listed infringing air fresheners on Facebook Marketplace. FAC ¶¶ 149, 190,

293. In their Motion, Plaintiffs point to this third-party "Facebook Marketplace listing" in

support of their direct copyright infringement claim. (Dkt. No. 81-6 at 16.) But the law is clear

that a service provider cannot be directly liable for content uploaded by a third-party user absent

a showing of volitional conduct. *See Cartoon Network*, 536 F.3d at 130 (adopting *Netcom*'s

reasoning that a service provider could not be directly liable where third-party "posted a

copyrighted work that was automatically reproduced by the defendant's computer"); *Lopez v.

Bonanza.com, Inc.*, No. 17 CIV. 8493 (LAP), 2019 WL 5199431, at \*23 (S.D.N.Y. Sept. 30,

2019) (granting motion to dismiss because allegation that defendant was "an online platform

where allegedly infringing items are sold by third-party users" was insufficient to show

volitional conduct); *see also Okolita v. Amazon.com, Inc.*, No. 2:22-cv-00284-LEW, 2023 WL

4847259, at \*9 (D. Me. July 28, 2023) (dismissing direct copyright infringement claims against

eBay because the e-commerce platform was "in the position of a service provider" rather than

posting the infringing content itself). Absent from the FAC is any factual allegation showing that

Meta "is the one who 'actually pressed the button'" to upload allegedly infringing product

images. *See ABKCO Music, Inc.*, 50 F.4th at 322.

The Ninth Circuit's opinion in *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir.

2017), is highly instructive and reinforces the lack of any volitional conduct alleged here. In that

case, plaintiff Perfect 10 alleged that Defendant Giganews was directly liable for copyright

infringement because Giganews operated a software program which displayed user-uploaded

images that infringed Perfect 10's copyrights. *Id.* at 663. The Ninth Circuit (after favorably citing

*Cartoon Network*) affirmed dismissal of Perfect 10's direct infringement claim pursuant to Rule

12(b)(6). Addressing the purported violation of Perfect 10's "display" rights—the only type of violation asserted by Plaintiffs here—through Giganews's software, the Ninth Circuit held that Giganews's actions "were akin to 'passively storing material at the direction of users in order to make that material available to other users upon request,' or automatically copying, storing, and transmitting materials upon instigation by others," and therefore did not constitute volitional conduct. *Id.* at 668 (citation omitted).

Plaintiffs' cited cases do not support Plaintiffs' arguments. To start, Plaintiffs' reliance upon *Prepared Food Photos, Inc. v. Chicken Joes, LLC*, 2024 WL 382529 (S.D.N.Y. Feb. 1, 2024) to show *Meta's* direct infringement is somewhat ironic. In that case, the alleged copyright infringement occurred on Twitter, another social media service. But the plaintiff did not sue *Twitter* for direct infringement, *see id.* at *1—nor could it, given that Twitter did not engage in any volitional conduct infringing the plaintiff's display rights.

The case of *Trombetta v. Novocin*, 2021 WL 6052198 (S.D.N.Y. Dec. 21, 2021), is distinguishable because there, the plaintiff alleged that the defendant "affirmatively reposted the [allegedly infringing content] on its own website," *id.* at *12, whereas here, the FAC alleges that a third-party uploaded content to Facebook Marketplace. And Plaintiffs' most-cited case, *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188 (S.D.N.Y. 2021), is completely inapposite because the plaintiff in that case alleged that the defendant itself copied the plaintiff's video and embedded it in an online article that defendant drafted and posted on defendant's own website. *Id.* at *192.

Plaintiffs' reliance upon *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), is also misplaced. In that case, defendant Google actively and deliberately accessed plaintiff Perfect 10's website, indexed it, made copies of copyrighted images on that website, and

later displayed them to users. *Id.* at 1155. The Ninth Circuit found that Perfect 10 established a

prima facie case of direct infringement. But, citing *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d

544, 556 (4th Cir. 2004) (discussed and approved by the Second Circuit in *Cartoon Network*),

the court declined to address, hypothetically, whether "an entity that merely passively owns and

manages an Internet bulletin board or similar system violates a copyright owner's display and

distribution rights when the users of the bulletin board or similar system post infringing works."

*Id.* at 1160 n.6. The Ninth Circuit, following *Cartoon Network*, later concluded (correctly) that

such an entity could not be directly liable. *See Giganews, Inc.*, 847 F.3d at 668.

The Northern District of California's opinion in *Cook v. Meta Platforms Inc.*, 2023 WL

6370891 (N.D. Cal. Jan. 4, 2023), cited heavily by Plaintiffs in their motion, is relevant only

inasmuch as the court unequivocally agreed that "[a]n image posted by a user onto a Facebook

page is akin to a post on a 'message board' like the one at issue in *Giganews* . . . ."[3] *Id.* at *5.

Notably, the *Cook* court agreed with the court in *Harrison v. Facebook, Inc.*, 2019 WL 11343562

(N.D. Cal. July 2, 2019), which held the plaintiff's direct infringement claim against Facebook

must be dismissed because "Plaintiff cannot allege that Facebook has done anything but serve as

a passive host to content uploaded and created by Plaintiff and her agent." *Id.* at *2.

In a fruitless effort to emulate the plaintiff in *Cook*, Plaintiffs point to allegations in the

FAC that the Facebook Marketplace listings at issue were displayed "along with a

geographically specific set of 'Today's picks . . . .'" (Dkt. No. 81 at 17.) Even if the FAC went

on to allege (and, critically, it does not) that Meta itself actively curated the content appearing in

---

[3] Unlike in this case, the plaintiff in *Cook* alleged that Meta itself "posts the [allegedly infringing advertisements] and does so selectively, sending them to specific Facebook users and not others." *Id.*

"Today's picks," such a hypothetical allegation would be irrelevant because the FAC does not allege that any *infringing content* appeared in the "Today's picks." Courts have explicitly rejected the sleight of hand attempted by Plaintiffs here to establish volitional conduct. For example, in *Stross v. Twitter, Inc.*, 2022 WL 1843142 (C.D. Cal. Feb. 28, 2022), the court granted Twitter's motion to dismiss a direct copyright infringement despite an allegation that Twitter "finds and highlights 'great Tweets,' including photographs," because the plaintiff failed to allege that *his photographs* were actually "selected for inclusion by Twitter" in these features. *Id.* at *2. Similarly, in *CoStar*, the Fourth Circuit held that the defendant did not engage in *relevant* volitional conduct when its employees reviewed and blocked certain photographs, because such conduct "does not amount to 'copying,' nor does it add volition to [defendant's] involvement in storing the copy." 373 F.3d at 556. In short, the alleged generation of *non-infringing* "Today's picks" on Facebook Marketplace cannot plausibly show that Meta engaged in volitional conduct that "caused" Plaintiffs' purportedly copyright content to be displayed on the Facebook Marketplace listings at issue. *See Cartoon Network*, 536 F.3d at 123-25, 130-31.

Plaintiffs also contend that Meta may be directly liable for copyright infringement because the allegedly infringing images from the Pina Colada Listings were also displayed on the "checkout," "order details," and "order status" pages. (Dkt. No. 81-6 at 16.) The Southern District addressed—and rejected—a similar argument in the oft-cited case of *Wolk v. Kodak Imaging Network*. In *Wolk*, the plaintiff alleged that defendant Kodak was liable for direct copyright infringement because "an electronic preview page is generated on the Kodak Gallery website when a user is making an order for a product bearing a[ copyrighted] image." 840 F. Supp. 2d at 742. Citing *Cartoon Network*, the court held that such conduct could not support a direct infringement claim because the display on the preview pages "is done electronically

through an automated computer system," which is not volitional conduct. *Id.*

Here, the FAC does not allege that Meta loaded the copyrighted image to its site - nor could it, as those images are loaded by a third-party user of the platform. The FAC instead alleges that it was only when a buyer clicked the "Buy Now" button that the seller-uploaded image from the listing was shown on the "checkout page." FAC ¶¶ 160-63. Similarly, the FAC alleges that it is only when the buyer clicked on the "See order detail" button that a seller-uploaded image from the listing was shown on the "Order details" page, and only when the buyer clicked "Order Status" that a seller-uploaded from the listing was shown on the "Order details" page. *Id.* ¶¶ 172-74, 186-87. There is no allegation in the FAC suggesting that the generation of these confirmation and status pages, which merely contained details on the buyer's purchase from the allegedly infringing listing, is anything other than automated, which is insufficient to support a claim for direct copyright infringement. *See Wolk*, 840 F. Supp. 2d 742 (holding that automatically generated preview pages could not support a finding of volitional conduct).[4]

Furthermore, according to the FAC, it is the buyer's purchase that results in the generation of the confirmation and status pages, and the Second Circuit has held that "issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct" cannot support direct liability. *See Cartoon Network*, 536 F.3d at 131 (holding that direct liability is not available "for copies that are made automatically upon [a] customer's demand"); *see also Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006)

---

[4] It is Plaintiffs' burden to allege facts plausibly showing that the alleged display of copyrighted material on Facebook Marketplace "did not happen automatically." *Long v. Dorset*, 854 F. App'x 861, 864 (9th Cir. 2021) (affirming 12(b)(6) dismissal of direct copyright claim against Facebook, Inc.).

("Without the user's request, the copy would not be created and sent to the user, and the alleged infringement at issue in this case would not occur. The automated, non-volitional conduct by Google in response to a user's request does not constitute direct infringement under the Copyright Act.").

Because the FAC contains no allegations plausibly showing that Meta engaged in volitional conduct that caused the copying of Plaintiffs' purportedly copyrighted design, Plaintiffs' proposed direct copyright infringement claim would not survive a motion to dismiss, and that proposed amendment should be denied as futile. *See Lopez*, 2019 WL 5199431, at *25 (granting motion to dismiss direct copyright infringement claims against Microsoft, Hostway, GoDaddy, Poshmark, and Pixel); *Long v. Dorset*, 854 F. App'x at 864 (affirming dismissal of direct copyright infringement claims against Facebook, Inc. because the plaintiff did not plausibly allege that the "distribution [of the copyrighted material did] not happen automatically" or that Facebook "selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution").

### 2.    The FAC Fails to State a Claim for Contributory Copyright Infringement

Plaintiffs contend that Meta is liable for contributory copyright infringement because Meta failed to remove the February Pina Colada Listing and the March Pina Colada Listing (collectively, the "Pina Colada Listings"). To state a claim for contributory copyright infringement, Plaintiffs must plead facts plausibly showing, *inter alia*, that (1) Meta had knowledge that the listings were infringing but (2) induced, caused, or materially contributed to the sellers' allegedly infringing conduct. *Bus. Casual Holdings, LLC*, 2023 WL 6842449, at *2.

The FAC fails to state a claim for contributory infringement as to the February Pina Colada Listing because the FAC does not plausibly allege that Meta knew that the listing was

infringing. The FAC fails to state a claim for contributory infringement as to the March Pina Colada Listing because it does not plausibly allege that Meta materially contributed to the seller's conduct.

### a. The FAC Fails to Allege Facts Plausibly Showing Meta's Knowledge That the February Pina Colada Listing Was Infringing

The FAC fails to allege facts plausibly showing that Meta had knowledge that the February Pina Colada Listing was infringing because the FAC alleges only that Plaintiffs emailed the listing to Kilpatrick Townsend & Stockton LLP ("Kilpatrick"), which responded that such notices were outside the scope of the firm's representation of Meta.

The only allegation in the FAC concerning Meta's knowledge of the February Pina Colada Listing is that Plaintiffs' counsel emailed Kilpatrick the URL for the listing on February 9, 2024. FAC ¶ 284. But the FAC goes on to allege that Kilpatrick responded to Plaintiffs' counsel that such emails were "improper" because such "matters are outside the scope of [Kilpatrick's] representation of Meta." *Id.* ¶ 290. The FAC does not allege that Kilpatrick's statement about the scope of representation was false. Instead, the FAC alleges that Plaintiffs accepted Kilpatrick's representation, responding that "in light of this, we will send future notices directly to Meta's chief legal officer." *Id.* ¶ 291. The FAC does not allege that Plaintiffs sent the February Pina Colada Listing to Meta's chief legal officer.

Plaintiffs contend that by sending the URL for the February Pina Colada Listing to Kilpatrick, actual knowledge of that listing and Plaintiffs' allegations of infringement about it must be imputed to Meta under general principles of agency. Plaintiffs are wrong. "An agent is not cloaked with apparent authority with respect to a third party who cannot—due to its own knowledge of the agent's limited authority—reasonably rely on the agent's position and actions, even when those actions might otherwise support a claim of apparent authority." *Helena*

*Erectors, Inc. v. Trinity Indus., Inc.*, No. 84 Civ. 7034-CSH, 1987 WL 9698, at *3 (S.D.N.Y.

Apr. 16, 1987); *see also Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 328 (2d Cir. 2010)

(holding that a "party cannot claim that an agent acted with apparent authority when it 'knew, or

should have known, that [the agent] was exceeding the scope of its authority'" (citation

omitted)). Here, the FAC itself alleges that Plaintiffs knew of the limitations of Kilpatrick's

representation of Meta. FAC ¶¶ 290-91. The FAC therefore fails to allege facts plausibly

showing that the purported knowledge of infringement provided to Kilpatrick on February 9,

2024 can be imputed to Meta.

   Plaintiffs also contend that an interrogatory response satisfies the knowledge element of

contributory liability as to the February Pina Colada Listing. But "the standard on a motion for

leave to amend is the same as that on a Rule 12(b)(6) motion to dismiss, 'the Court cannot

consider facts outside the pleadings in considering the futility of an amendment.'" *Rochester

Drug Co-Operative, Inc. v. Hiscox Ins. Co*., 545 F. Supp. 3d 21, 24 (W.D.N.Y. 2021); *see also

Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000) (reversing because "the district court

plainly relied on a matter outside the pleadings: specifically, defendants' factual contention—

contained in a declaration in support of their motion to dismiss and in opposition to plaintiff's

motion to amend" in ruling on motion to dismiss); *Nettis v. Levitt*, 241 F.3d 186, 194 (2d Cir.

2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6)

motions to dismiss."), *overruled on other grounds by Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d

Cir. 2006). In any event, the interrogatory response is insufficient because it merely states that

certain Meta employees "became aware" of particular URLs; it does not state that those

employees were aware that Plaintiffs had accused any particular URL of copyright infringement,

nor that the attorneys were even aware of the images – much less Plaintiffs' alleged ownership of

copyrights in the images. (Dkt. No. 81-4 at 8-9.) *See White v. DistoKid*, 22 Civ. 2205 (VEC)

(GWG) 2024 WL 3195471, at *10 (S.D.N.Y. June 24, 2024) ("The only allegation to touch on

the issue of knowledge alleges that DistroKid was merely aware of royalty payments received for

the content — not that the content infringed on White's copyright."); *accord Business Casual*

*Holdings LLC v. YouTube, LLC*, No. 22-3007-cv, 2023 WL 6842449, *2 (2d Cir. Oct. 17, 2023)

(affirming dismissal of contributory copyright claim because the complaint failed to allege that

the defendant had knowledge of the infringing videos); *Wolk,* 840 F. Supp. 2d at 750-51

(granting summary judgment to defendant on contributory infringement claim where the plaintiff

did not show the defendant "acted with knowledge that it was passing along infringing images"),

*aff'd* 569 F. App'x 51 (2d Cir. 2014).

      Because the FAC fails to allege facts supporting the knowledge element of contributory

liability as to the February Pina Colada Listing, the Court should deny Plaintiffs leave to amend

their complaint to assert such a claim as futile. *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288,

308 (S.D.N.Y. 2020) (granting motion to dismiss contributory copyright claim because "there is

no factual support in the complaint for the conclusion that Chappell or BVT (or Saban

Entertainment itself) knew or had any reason to know of the copyright infringement at issue

here").

### b. The FAC Fails to Allege Facts Plausibly Showing That Meta Failed to Take Action Against the March Pina Colada Listing.

      With regard to the March Pina Colada Listing, the FAC fails to allege facts supporting

the material contribution element of contributory liability because it fails to allege that Meta

declined to take action against the listing after becoming aware of it.

      According to the FAC, Plaintiffs reported the March Pina Colada Listing to Kilpatrick—

with Kilpatrick's prior, express approval dated March 7, 2024 (FAC ¶ 292)—on March 13, 2024.

*Id.* ¶ 294. But the FAC fails to allege facts plausibly showing that Meta thereafter induced, caused, or materially contributed to the purported infringement. *Bus. Casual Holdings, LLC*, 2023 WL 6842449, at *2.

Plaintiffs do not argue in their Motion that Meta "induced" or "caused" the purported infringement; they argue only that Meta "materially contributed" to it. (Dkt. No. 81-6 at 20.) Quoting Ninth Circuit authority, Plaintiffs contend that in "the context of cyberspace," a defendant "materially contributes" to the purported infringement if it "learns of specific infringing material . . . *and fails to purge such material from the system*." *Id.* (emphasis added) (quoting *Perfect 10*, 508 F.3d at 1171). The Ninth Circuit has similarly held that, "absent actual notice and [the defendant's] *demonstrated failure to remove the offending material*," a court cannot impose contributory liability. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir. 2001) (emphasis added).

Here, the FAC does not allege that Meta "fail[ed] to purge" or "fail[ed] to remove" the March Pina Colada Listing. The FAC merely alleges that a customer purchased the product shown in the listing two days after Plaintiffs reported it, suggesting that the listing was live on that day. FAC ¶¶ 157, 297. But an allegation that a listing remained live for just two days after a report is insufficient, as a matter of law, to show material contribution. *See Bus. Casual Holdings, LLC*, 2023 WL 6842449, at *2 ("[W]e agree with the district court that, 'because YouTube promptly'"—i.e., within 9, 23, and 3 days, respectively—"and permanently removed the First, Second, and Third RT Videos from its platform once it received the plaintiff's DMCA notices, the Amended Complaint does not permit an inference that YouTube acted in concert with TV-Novosti").

Significantly, Plaintiffs do not even allege in their motion that Meta failed to remove the

March Pina Colada Listing. Despite their invocation of the Ninth Circuit's failure to purge standard, Plaintiffs argue, without citing any legal support, that Meta materially contributed to the infringement because it "actively participated in the sale" of the product two days after Meta received Plaintiffs' notice. (Dkt. No. 81-6 at 20-21.) This is a distinction without a difference; continuing to provide services supporting the infringement is the same thing as failing to remove the infringement. And here, the result is the same: all Plaintiffs have alleged is that Meta did not take action against the March Pina Colada Listing within two days.

Given that the Second Circuit has held that a defendant's removal of an alleged infringement 3, 9, or even 23 days after acquiring knowledge of the infringement "does not permit an inference" of material contribution *at the pleading stage*, *see id.*, Plaintiffs' allegation that the March Pina Colada Listing remained live for 2 days after notice does not permit an inference that Meta materially contributed to that purported infringement. The *absence* of an allegation that Meta failed to take down the listing is not sufficient to support a reasonable inference that Meta failed to do so. And in light of the Second Circuit's directive that the plausibility standard must be assessed in light of "the full factual picture presented by the complaint," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011), the fact that the FAC contains at least *sixteen* allegations of Meta's purported failure to remove listings[5]— including one made "upon information and belief"—Plaintiffs' refusal to make any such allegation—even "upon information and belief"—as to the March Pina Colada Listing confirms that any inference to the contrary would be decidedly *un*reasonable.

Plaintiffs also complain that Meta "permitted the <u>same</u> seller to sell the <u>same</u> product on

---

[5] FAC ¶¶ 252, 255, 257, 259, 261, 264, 266, 270, 272, 275-77, 279, 281, 283, 285.

Facebook Marketplace just a month later"—referring to the February and March Pina Colada

Listings, respectively. (Dkt. No. 81-6 at 20.) This is not a basis for contributory liability, for two

reasons. First, as discussed above, the FAC does not adequately allege Meta's knowledge of the

February Pina Colada Listing. Second, in an opinion the Second Circuit affirmed as "thorough

and well-reasoned," the Southern District rejected an identical argument that YouTube "should

have noticed and removed" infringing content earlier given that the later-posted content

contained the "same [infringing] images" as earlier-reported content. *Bus. Cas. Holdings, LLC*,

2022 WL 17177970, at *7, *aff'd*, 2023 WL 6842449 (2d Cir. Oct. 17, 2023). Such "alleged

similarities," even taken as true, "do not support an inference" that a defendant has the requisite

"specific knowledge" of the subsequent infringing content. *Id.*

      Plaintiffs cite no authority in support of their argument that simply because the same

seller and product were (allegedly) involved, Meta's failure to remove the March Pina Colada

Listing *before* Plaintiffs notified Meta about it can support a claim for contributory infringement.

Nor could they, as this would impose on platforms the heavy burden to proactively monitor for

infringement, which the law does not require.[6] *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d

19, 35 (2d Cir. 2012) ("Section 512(m) is explicit: DMCA safe harbor protection cannot be

conditioned on affirmative monitoring by a service provider. For that reason, § 512(m) is

incompatible with a broad common law duty to monitor or otherwise seek out infringing activity

based on general awareness that infringement may be occurring.").

      Accordingly, the FAC fails to allege facts plausibly showing Meta's material contribution

to the March Piña Colada Listing, and the Court should deny Plaintiffs leave to assert a

---

[6] The same issue, arising in connection with Plaintiffs' proposed contributory *trademark* claims,
is discussed *infra* Part III at _.

contributory copyright claim in connection with that listing.

### 3. The FAC Fails to State a Claim for Vicarious Copyright Infringement

The FAC fails to state a claim for vicarious copyright infringement because it fails to allege facts plausibly showing satisfaction of either required element: i.e., that Meta "(1) had the right and ability to supervise the infringing conduct and (2) has a direct financial interest in the infringing activity." *Ranieri v. Adirondack Dev. Grp.*, LLC, 164 F. Supp. 3d 305, 349 (N.D.N.Y. 2016).

The FAC contains *zero* factual allegations in support of the first element—only a threadbare recitation of the element itself. FAC ¶ 353. Instead, Plaintiffs merely argue in a footnote in their brief that "Meta's right to stop or limit the infringement is not in dispute." (Dkt. No. 81-6 at 19 n.3.) But a party cannot meet the plausibility standard of Rule 12(b)(6) by arguing in a brief that a required element is not in dispute. *See In re Agape Litig.*, 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011) ("It is well-settled that a plaintiff cannot amend the complaint through briefs and affidavits, and 'such facts are thus irrelevant for purposes of determining whether [the c]omplaint should be dismissed for failure to state a claim.") (alterations in original); *see also J&J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc.*, 17-cv-2196-ARR-CLP, 2018 WL 1725692, at *2 (E.D.N.Y. Apr. 10, 2018) ("And plaintiff's allegations that Branch did have 'a right and ability to supervise the infringing activities' . . . cannot establish liability, as these are the types of 'legal conclusions couched as factual allegations' that I am 'not bound to accept as true.'" (citation omitted)).

To show that Meta has a "right and ability to supervise" the allegedly infringing conduct, Plaintiffs must allege facts plausibly showing that Meta "has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10*, 508 F.3d at 1173. The FAC alleges no facts that could support either element. Meta's "ownership" of

Facebook Marketplace "does not alone suffice to show control." *Hartmann v. Google LLC*, No. 20 CIV. 5778 (JPC), 2022 WL 684137, at *8 (S.D.N.Y. Mar. 8, 2022) (granting motion to dismiss). Plaintiffs' motion to amend to assert a vicarious liability claim therefore should be denied on that ground alone.

As to the second element of vicarious liability, Plaintiffs allege only that Meta retained a "selling fee" from sales on Facebook Marketplace. FAC ¶ 195. That allegation—reflecting nothing more than the unremarkable fact that an e-commerce provider collects fees from transactions—is insufficient to show a causal link between the fee and the infringement. Put another way, Meta's alleged collection of "selling fees" on Facebook Marketplace shows only that it generally benefits financially from sales of products on Facebook Marketplace, not that it benefits specifically from *the alleged infringement of Plaintiffs' copyrighted design*. *See Capitol Recs., Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 645 (S.D.N.Y. 2011) ("[A]ny link between infringing activity and a direct benefit to MP3tunes is attenuated because . . . infringing and noninfringing users of Sideload.com paid precisely the same or nothing at all, for locker services."); *Wolk*, 840 F. Supp. 2d at 748 (finding that no direct financial benefit exists because "Defendants' profits are derived from the service they provide, not a particular infringement"); *see also DistoKid*, 2024 WL 3195471, at *9 (no direct financial benefit where complaint alleged no facts showing that defendant's users were "drawn" to its platform in order to engage in or profit from copyright infringement); *Giganews*, 847 F.3d at 674 ("Perfect 10 was required to provide evidence that customers were drawn to Giganews's services because of the infringing Perfect 10 material at issue."). The FAC fails to allege facts establishing that Facebook Marketplace users are "drawn" to the service because of the infringement or that there is otherwise a causal link between Meta's general "selling fees" and the particular infringement

alleged. Thus, amendment to assert a vicarious liability claim should be denied on this second, independent ground.

### C.     The FAC Fails to State a Claim for Contributory Trademark Infringement

The FAC fails to allege facts plausibly establishing Meta's contributory liability for the three additional instances of alleged trademark infringement because, for each listing, the FAC does not plausibly allege *both* that Meta (a) knew of the listing and (2) failed to remove it. To state a claim for contributory trademark infringement, Plaintiffs must allege facts plausibly showing both that Meta had "contemporary knowledge of which particular listings are infringing" and that Meta continued to "supply its service" in connection with those listings. *See Tiffany*, 600 F.3d at 109; *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) ("[A] defendant must have . . . continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied."). The FAC does neither.

#### 1.     The FAC Fails to Allege Meta's Contemporary Knowledge of the Listings

The FAC alleges that on February 9, 2024, Plaintiffs emailed Kilpatrick about two pertinent listings: the February Pina Colada Listing and an "Ikeda Tree" product listing (the "February Ikeda Tree Listing"). FAC ¶¶ 284, 298. For the reasons explained above in connection with Plaintiffs' contributory copyright infringement claim, *supra* Section II.B.2, that February 9 email did not plausibly impute knowledge of any listings to Meta.

The FAC further alleges that "on May 24, 2024, it appeared that the same 'seller'" who posted the February Ikeda Tree Listing had posted a different listing for "those same" Ikeda Tree products. FAC ¶¶ 299, 301 (the "May Ikeda Tree Listing"). But the FAC does not allege that Plaintiffs *notified Meta* about the May Ikeda Tree Listing. Instead, Plaintiffs contend that

because they properly notified Meta about the *February* Ikeda Tree Listing on March 25, 2024 (not February 9, FAC ¶ 299), knowledge of the *May* Ikeda Tree Listing can be imputed to Meta. That is incorrect. Rejecting an identical argument at the pleading stage, the Southern District explained:

> [A]wareness that certain Merchant Defendants had at *one* point in time posted infringing listings is not enough to plausibly support an inference that the Alibaba Defendants had specific knowledge that those Merchant Defendants were likely to infringe again, nor that the Alibaba Defendants were sufficiently on notice to permit an inference of willful blindness. As the Alibaba Defendants note, to hold otherwise would effectively be to hold that they are required to 'remove' the storefront of any merchant who posts a single infringing listing.

*King Spider LLC v. 884886 CH Store*, 23-CV-3472(JMF), 2024 WL 3184674, at *2 (S.D.N.Y. June 26, 2024).

Here, if the Court accepted Plaintiffs' argument, then all website, app, and platform owners would be required to permanently block any user the first time that user is *accused* of infringement by a trademark owner, or affirmatively monitor that user's activities.[7] Otherwise, the trademark owner can discover a second infringement, *never report it to the website, app, or platform owner*, and prevail on a contributory trademark infringement claim. That is not the law, and Plaintiffs' dangerous argument must be soundly rejected. *See Tiffany*, 600 F.3d at 107 ("For contributory trademark infringement liability to lie . . . [s]ome contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary."); *Viacom Int'l*, 676 F.3d at 35 (citing *Tiffany* and confirming once again that even when "willful blindness" is alleged, the law does not impose on a provider "an affirmative duty to monitor" its services for

---

[7] As the district court explained while rejecting a similar argument in *Tiffany*, a service provider need not "automatically or permanently suspend a seller" after a takedown notice because such a notice is "a good faith determination of infringement, not an exact finding of infringement." 576 F. Supp. 2d at 517, *aff'd in relevant part*, 600 F.3d 93 (2010).

potential infringements); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 906 (S.D.N.Y. 2016) (granting motion to dismiss because allegation that defendant "had reason to suspect that users of its [service] were infringing on the plaintiffs' protected marks" could "not give rise to liability").

Accordingly, as to the May Ikeda Tree Listing, and the February Pina Colada Listing and February Ikeda Tree Listing reported to Kilpatrick on February 9,[8] the FAC fails to allege facts plausibly establishing Meta's contemporary knowledge.

> **2.** **The FAC Fails to Allege That Meta Declined to Take Action Against the Additional Listings**

Plaintiffs' proposed contributory trademark infringement claims arising from the February and May Ikeda Tree Listings fail as a matter of law for the independent reason that the FAC fails to allege facts plausibly showing that Meta "continued to supply" its services in connection with those listings after it became aware of them. *See Tiffany*, 600 F.3d at 107.

The FAC alleges that on March 25, 2024, Plaintiffs emailed Kilpatrick—in the format agreed upon by the parties on March 7, 2024—about the February Ikeda Tree Listing. *Id.* ¶ 299. But the FAC does *not* allege that Meta failed to remove the listing after that communication. And as noted above, Plaintiffs never reported the May Ikeda Tree Listing to Kilpatrick (or Meta), but even if they had, the FAC does not allege that Meta failed to remove the listing.

Without such allegations, the FAC does not plausibly establish the second element of contributory liability—that Meta "continued to supply" its services in support of the listings. *See*

---

[8] For purposes of Plaintiffs' motion, Meta does not challenge the FAC's allegations regarding the notice provided to Kilpatrick on March 24, 2024 concerning the February Ikeda Tree Listing, given that the notice is alleged to have followed the format agreed upon by the parties on March 7. FAC ¶¶ 299-300.

*Tiffany*, 600 F.3d at 107; *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013) (affirming 12(b)(6) dismissal because plaintiff failed to allege facts plausibly showing that defendant "supplied a product to an infringer with the knowledge that the infringer was mislabeling that product"); *see also Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, No. 07 Civ. 6959(DAB), 2010 WL 4968072, at *6 (S.D.N.Y. Dec. 6, 2010) ("Opposing this Motion to Dismiss, Plaintiffs urge this Court to accept the 'plausible inference' that the Licensor Defendants continued to provide their services after learning of the infringement. Nevertheless, Plaintiffs' allegations provide no 'factual content that allows the court to draw the reasonable inference.'" (citations omitted)).

Accordingly, Plaintiffs fail to state a claim for contributory trademark infringement as to the February Pina Colada Listing, the February Ikeda Tree Listing, and the May Ikeda Tree Listing. Amendment to add that claim should therefore be denied as futile.

### III.    CONCLUSION

For the reasons stated herein, the Court should deny Plaintiffs' Motion in full.

Pursuant to the Court's request, the parties identify the following four dates and times when they are available for a hearing on the Motion for Leave to Amend:

- Tuesday, July 30, from 10-1
- Wednesday, July 31, from 2-5
- Thursday, August 1, from 2-5
- Friday, August 2, from 10-1

Dated: July 19, 2024.                                   Respectfully submitted,

                                                        /s/ *R. Charles Henn Jr.*
                                                        KILPATRICK TOWNSEND & STOCKTON LLP

                                                        William H. Brewster (520585)
                                                        R. Charles Henn Jr. (703461)
                                                        H. Forrest Flemming, III (703406)

The Grace Building
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: bbrewster@kilpatricktownsend.com
          chenn@kilpatricktownsend.com
          fflemming@kilpatricktownsend.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2024, a true and correct copy of the foregoing was served on counsel for Plaintiffs via ECF as follows:

Louis Orbach
Liza R. Magley
Collin Michael Carr
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Emails: lorbach@bsk.com; lmagley@bsk.com; ccarr@bsk.com

*/s/ R. Charles Henn Jr.*
R. Charles Henn Jr.
Kilpatrick Townsend & Stockton LLP
*Attorney for Defendant*

25