**KILPATRICK TOWNSEND & STOCKTON LLP**

William H. Brewster (520585)
R. Charles Henn Jr. (703461)
H. Forrest Flemming, III (703406)

The Grace Building
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAR-FRESHNER CORPORATION and JULIUS SÄMANN LTD., <br><br>         *Plaintiffs*, <br><br> v. <br><br> META PLATFORMS, INC., <br><br>         *Defendant*. | No. 5:22-cv-1305 (MAD/ML) |
| META PLATFORMS, INC., <br><br>         *Counterclaim-Plaintiff*, <br><br> v. <br><br> JULIUS SÄMANN LTD., <br><br>         *Counterclaim-Defendant*. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION**
**TO THE JULY 2024 MAGISTRATE RULINGS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................3

     A.     Meta's Initial Venue Motion ..................................................................3

     B.     Meta's Diligent Pursuit of Its Forum-Selection Clause Defense ........4

III.     LEGAL STANDARDS ......................................................................................11

IV.     ARGUMENT .....................................................................................................12

     A.     The First Ruling Was Clearly Erroneous ...........................................12

     B.     The Second Ruling Was Clearly Erroneous .......................................15

          1.     The Law Does Not Require a Party to Move to Modify a
               Deadline Prior to Its Expiration in Order to Show Diligence..............15

          2.     The Law Prohibits Parties From Moving Under Rule
               16(b)(4) Based on Hypothetical, Future Motions................................17

          3.     Meta Clearly Established Diligence in Pursuing Its Forum-
               Selection Clause Defense ....................................................................19

V.     CONCLUSION .................................................................................................22

     CERTIFICATE OF SERVICE .........................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 650 Fifth Ave. & Related Properties*,
  934 F.3d 147 (2d Cir. 2019) .................................................14

*Anderson v. City of Bessemer City*,
  470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) .......................14

*Endurance Am. Ins. Co. v. DiStefano*,
  No. 1:20-CV-0203 (LEK), 2021 WL 3089127 (N.D.N.Y. July 22, 2021) ...........................13

*Enzymotec Ltd. v. NBTY, Inc.*,
  754 F. Supp. 2d 527 (E.D.N.Y. 2010) ...............................16

*Epic Tech, LLC v. Fusion Skill, Inc.*,
  No. 4:19-CV-02400, 2022 WL 463832 (S.D. Tex. Feb. 15, 2022) .......................20

*Erdogan v. Nassau Cnty.*,
  No. 10-CV-05837 AKT, 2014 WL 1236679 (E.D.N.Y. Mar. 25, 2014) ...............................19

*Hicks v. T.L. Cannon Mgmt. Corp.*,
  2013 WL 4508440 (N.D.N.Y. Aug. 23, 2013) .......................................3

*Innova Hospital San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
  892 F.3d 719 (5th Cir. 2018) ...............................14

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) .................................15, 20

*Knoll, Inc. v. Moderno, Inc.*,
  2012 WL 3613896 (S.D.N.Y. Aug. 22, 2012) .................................10, 18

*Kotler v. Bosco*,
  2019 WL 12291097 (N.D.N.Y. Nov. 4, 2019) .......................13

*Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*,
  318 F.R.D. 28 (S.D.N.Y. 2016) .................................10, 18

*McClain v. Dugan*,
  No. 9:17-CV-46 (LEK/ML), 2019 WL 6330507 (N.D.N.Y. Oct. 28, 2019) ..........................20

*Meador v. Albanese L. Off.*,
  2009 WL 10722258 (N.D.N.Y. Sept. 2, 2009) .......................22

*Morgan v. Gusman*,
    No. CIV.A. 06-5700, 2010 WL 1936215 (E.D. La. May 12, 2010)........................13

*Noyes v. Kelly Servs.*,
    488 F.3d 1163 (9th Cir. 2007). Because the Second Ruling...................................21

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .........................................................19

*Palomino v. O'Leary*,
    2010 WL 3025582 (N.D. Ill. July 29, 2010).....................................................18, 19

*Robinson v. Town of Colonie*,
    91-CV-1355, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993)........................16, 17

*Ruel v. McGrath*,
    No. 1:12-CV-417, 2013 WL 12130427 (N.D.N.Y. June 21, 2013) ........................16

*Sight Scis., Inc. v. Ivantis, Inc.*,
    2023 WL 7458354 (D. Del. July 3, 2023) .............................................................18

*Simon Prop. Grp., L.P. v. mySimon, Inc.*,
    2003 WL 1807135 (S.D. Ind. Mar. 26, 2003).........................................................21

*SiteLock LLC v. GoDaddy.com LLC*,
    No. CV-19-02746-PHX-DWL, 2021 WL 1947515 (D. Ariz. May 14, 2021) .................10, 18

*Stewart v. Coyne Textile Servs.*,
    212 F.R.D. 494 (S.D.W. Va. 2003).........................................................................21

*Syntek Cap., AG v. Welch*,
    No. 05-CV-180, 2006 WL 8452013, at *2–3 (N.D.N.Y. Feb. 16, ....................17, 19

*Tompkins v. R.J. Reynolds Tobacco Co.*,
    92 F. Supp. 2d 70 (N.D.N.Y. 2000).......................................................................12

*Trott v. Deutsche Bank, AG*,
    No. 20 CIV.10299 (DEH), 2024 WL 1994342 (S.D.N.Y. May 6, 2024)...............10

*UB Found. Activities, Inc. v. IT Healthtrack, Inc.*,
    No. 04-CV-443S(F), 2009 WL 4042937 (W.D.N.Y. Nov. 19, 2009) ....................18

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948)................................................................................................12

*Veeder v. Nutting*,
    1:10-CV-00665 MAD, 2012 WL 1416266, at *6 (N.D.N.Y. Apr. 24, 2012) .................15, 16

*Wandering Dago Inc. v. New York State Off. of Gen. Servs.*,
  2014 WL 12797920, at *2 (N.D.N.Y. July 28, 2014)......................................................17, 18

*Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*,
  2020 WL 13605451 (D. Mass. Dec. 22, 2020) ......................................................................19

**Other Authorities**

Fed. R. Civ. P. 16(b)(4).............................................................................................. *passim*

Fed. R. Civ. P. 54(b) ........................................................................................................8

Fed. R. Civ. P. 72(a) ......................................................................................................11

L.R. 60.1 .......................................................................................................................12

L.R. 72.1(b)...................................................................................................................12

## I.   INTRODUCTION

Meta has diligently pursued its forum-selection clause defense throughout this litigation, even as Plaintiffs improperly refused to respond to related discovery requests. But two clearly erroneous rulings have denied Meta the opportunity to continue pursuing this defense and vindicate its contractual rights, and instead rewarded Plaintiffs for their discovery misconduct. Accordingly, Meta respectfully objects to the rulings at issue.

At the beginning of this case, in the alternative to its motion to dismiss, Meta sought a transfer based on forum-selection clauses Plaintiffs agreed to in the Facebook Terms of Service and Instagram Terms of Use. The Court denied Meta's motion to transfer because there was "conflicting evidence" on the issue of Plaintiffs' assent to these forum-selection clauses and whether the clauses were reasonably communicated to Plaintiffs. The Court therefore could not find "as a matter of law," "on the present record," that Plaintiffs were subject to the relevant clauses.

Shortly after the Court's ruling, discovery opened and Meta served discovery requests relevant to the forum-selection clause issue—including to supplement the record to resolve the "conflicting evidence" highlighted by the Court—but Plaintiffs refused to comply with any forum-selection clause discovery and asserted meritless objections to dozens of Meta's other requests. Meta diligently pursued resolution of these issues through the meet-and-confer process, engaging in four hours of telephone conferrals and exchanging numerous letters and emails with Plaintiffs spanning over fifty single-spaced pages and addressing over thirty cases. Ultimately, the parties reached an impasse on twenty-nine of Meta's discovery requests, and Meta promptly moved to compel on June 13, 2024.

On July 8, 2024, the Magistrate denied Meta's motion to compel as to all forum-selection clause discovery (the "First Ruling") because the Court's May 14 deadline to file venue motions

had elapsed and Meta's forum-selection clause defense was therefore permanently "out of the case."

The First Ruling was clearly erroneous because the passage of the venue motion deadline did not permanently remove Meta's forum-selection clause defense from the case, much less warrant the preclusion of all related discovery. That is because, *inter alia*, case deadlines can be modified upon a showing of good cause and with the judge's consent under Federal Rule of Civil Procedure 16(b)(4). But whether Meta, armed with discovery from Plaintiffs, could later establish good cause to modify the venue motion deadline was not ripe and not at issue in Meta's motion to compel. Nevertheless, the First Ruling effectively decided on an incomplete record that Meta could never show good cause to modify the deadline. The First Ruling denied Meta any discovery in connection with its forum-selection clause defense—despite Meta having served timely discovery requests and pursued the conferral process in good faith—and instead rewarded Plaintiffs for their discovery misconduct.

On July 15, 2024, in an effort to rectify this unjust result, Meta requested a pre-motion conference on an anticipated motion to modify the venue deadline and/or for reconsideration of the First Ruling. Upon receiving Meta's conference request, the Magistrate held a conference, during which the Magistrate denied Meta leave to file a written motion and denied Meta's anticipated motion on the merits because Meta could not show "good cause" to modify the venue motion deadline (the "Second Ruling"). The sole basis for this ruling was that Meta had not filed a motion to modify the venue motion deadline before it expired.

The Second Ruling was clearly erroneous because in cases where the moving party needs discovery to meet a case deadline, the moving party first must diligently pursue the discovery and then—after the discovery is received and analyzed—diligently move to modify the case

deadline. That is the procedure Meta followed here, and Meta therefore established diligence under Rule 16(b)(4). The Magistrate's finding to the contrary was clear error.

For these reasons, and those stated below, Meta respectfully requests that the Court modify the First Ruling to compel Plaintiffs to comply with all appropriate forum-selection clause discovery, and either set aside the Second Ruling entirely, or modify it to grant Meta's request to extend the deadline to file venue motions to thirty days after Plaintiffs' compliance with such discovery.

## II.      FACTUAL BACKGROUND

### A.  Meta's Initial Venue Motion

In January of 2023, Meta sought leave to move to dismiss for failure to state a claim and lack of personal jurisdiction, or in the alternative, to transfer venue. Dkt. No. 10. Plaintiffs amended their complaint, and Meta renewed its motion on March 13, 2023. Dkt. Nos. 13, 17. Meta included its (alternative) transfer motion at this stage because courts agree that it is most efficient to transfer cases early in the proceedings. *See Hicks v. T.L. Cannon Mgmt. Corp.*, 2013 WL 4508440, at *5 (N.D.N.Y. Aug. 23, 2013) (ordering retransfer in part "because this case is in its infancy and because there has been no appreciable delay caused by the transfer and retransfer of the case").

Meta's transfer motion was based on forum-selection clauses in the Facebook and Instagram terms of service and terms of use (the "Terms"), to which Plaintiff Car-Freshner Corporation ("CFC") appeared to have agreed. Dkt. No. 17-1 at 21-23. In support of its motion, Meta submitted a declaration explaining and attaching various copies of the Terms, as well as evidence of a Facebook account and an Instagram account that appeared to be used by CFC. Dkt. No. 17-2.

In opposition, Plaintiffs argued that Meta's evidence was insufficient to show that the

3

Terms had been reasonably communicated to CFC, that CFC had assented to the Terms, or that

CFC was on inquiry notice of the Terms. Dkt. No. 21-9 at 21-33. Plaintiffs submitted the

declaration of the president of Plaintiff Julius Samann Ltd. ("JSL") stating that JSL has never

had a Facebook or Instagram account. Dkt. No. 21 at ¶¶ 4-5.

CFC, however, submitted a very different declaration, couched in many levels of

qualifying language. Dkt. No. 21-1. A legal manager at CFC declared that "upon information and

belief" the Facebook and Instagram accounts raised in Meta's motion "were not created by any

current CFC employee, nor, as far as we know, was either of those 'accounts' created by any

former CFC employee with the authority to bind our company to a contract with Meta,

Facebook, or Instagram." *Id.* at ¶ 25. Absent from this declaration were statements concerning:

(1) the scope of CFC's investigation; (2) CFC's *use* of the Facebook and Instagram accounts at

issue; (3) the factual basis for the declaration's "authority" legal argument; (4) other Facebook or

Instagram accounts created or used by CFC; or (5) emails or other communications regarding the

Terms received by CFC.

The Court granted in part Meta's motion to dismiss for failure to state a claim, denied

Meta's motion to dismiss for lack of personal jurisdiction, and denied Meta's alternative motion

to transfer. Dkt. No. 26. On the issue of transfer, the Court held that "on the present record," the

Court could not "conclude" *as a matter of law* that Plaintiffs had assented to the Terms. *Id.* at 34.

The Court explained there was "conflicting evidence about when CFC created its Facebook

account." *Id.* at 37. The Court further concluded that "[a]s the record stands," there was

"insufficient evidence" to show Plaintiffs were on inquiry notice of the Terms. *Id.*

**B.  Meta's Diligent Pursuit of Its Forum-Selection Clause Defense**

In light of the Court's order, discovery from Plaintiffs likely would resolve the

"conflicting evidence" highlighted by the Court. For example, if Plaintiffs identified individuals

4

with knowledge of the Facebook and Instagram accounts raised in the initial venue motion, then

Meta could depose them regarding their potential knowledge of and assent to the Terms

(including any updated Terms), and their authority to bind Plaintiffs. Or if Plaintiffs identified

other Facebook or Instagram accounts they created or used, and the individuals responsible for

them, Meta could take the depositions of those individuals on similar topics. Plaintiffs would

also need to search the email accounts of relevant individuals to see if they received notice of

Meta's updated Terms and produce any relevant documents.

Accordingly, on December 19, 2023—just one month after discovery opened—Meta

served the following interrogatories on CFC:

> 3. Identify—by URL, handle, or page—each Facebook or Instagram account or page that CFC has owned, operated, or controlled.

> 4. Identify each natural person who has operated or controlled the Car-Freshner Facebook Page, or who has used or made changes to the Car-Freshner Facebook Page at Car- Freshner's direction, on Car-Freshner's behalf, or with authorization from Car-Freshner.

> 5. Identify the Persons most knowledgeable concerning who operated, controlled, posted an image or video on, or caused an image or video to be posted on, the Car-Freshner Instagram Page.

> 6. Identify the Persons most knowledgeable concerning who operated or controlled an email address associated with the Car-Freshner Facebook Page or Car-Freshner Instagram Page.

> 7. If you contend that any Persons identified in response to Interrogatory 5 or 6 acted without authority to bind CFC, identify each such person.

*See* Dkt. No. 79 at 3-5. Meta also served the following document requests on Plaintiffs:

> 79. Documents sufficient to identify the Facebook and Instagram accounts, pages, usernames, and handles ever owned, controlled, managed, or operated for the benefit of Car-Freshner, as well as the email addresses associated with each account, page, username, or handle, and the date(s) Car-Freshner first created and first used each account, page, username, or handle.

> 80. Communications between Meta and Car-Freshner concerning Facebook or

Instagram accounts, pages, usernames, or handles owned, controlled, managed, or operated for the benefit of Car-Freshner, or concerning any terms governing the use of Facebook or Instagram.

81. Documents concerning Car-Freshner's awareness, ownership, control, management, and operation of, or ability to post on or contribute to, the Car-Freshner Facebook Page and Car-Freshner Instagram Page.

82. Documents concerning the creation of the Car-Freshner Facebook Page.

83. Documents concerning Car-Freshner's first post to the Car-Freshner Facebook Page.

84. Documents concerning the creation of the Car-Freshner Instagram Page.

*Id.* at 7.

In their January 24, 2024 responses, Plaintiffs objected to each of the foregoing requests as "not relevant," but they provided no explanation. In total, Plaintiffs refused to comply fully with over 70 of Meta's requests. *Id.* at 3-5, 7.

On February 16, Meta filed its answer to Plaintiffs' operative pleading. Dkt. No. 43. As its "Second Defense," Meta asserted: "Venue is improper due to valid forum selection clauses in the Meta Terms of Service and Instagram Terms of Use, as explained in Meta's Motion to Dismiss or Transfer. (Dkt. No. 17)." Dkt. No. 43 at 40. Plaintiffs never moved to strike that defense, or for judgment on the pleadings.

Because Plaintiffs refused to comply fully with over 70 of Meta's discovery requests, Meta sent Plaintiffs an extensive deficiency letter on February 16, 2024 that cited at least twenty cases supporting its position. Plaintiffs elected not to respond in writing and instead sought a telephone conferral. On February 27, the parties conferred over the phone for two hours but barely covered half of the disputed requests. The parties therefore scheduled a second conferral for March 13. *See* Dkt. No. 79-9 at 2.

In the interim, on March 5, the parties conducted an in-person mediation with former

Magistrate Judge Treece. *See* Dkt. No. 49. Because the mediation did not resolve the entire dispute, on March 8, the parties submitted their joint Case Management Plan to the Magistrate. Dkt. No. 45.

In that filing, Meta advised the Magistrate: "The Court denied in part Meta's motion to dismiss or transfer based on the record at the pleading stage, but Meta anticipates that discovery will strengthen the record for Meta, which may then seek summary judgment on the issues of personal jurisdiction and venue." *Id.* at 3. Meta also advised the Magistrate that "the parties genuinely dispute whether Plaintiff Car-Freshner Corp. assented to a valid forum selection clause requiring transfer of this action to the Northern District of California." *Id.* at 4. And Meta advised the Magistrate that Meta sought discovery concerning "Plaintiffs' assent to the Facebook Terms of Service and Instagram Terms of Use, including Plaintiffs' knowledge of the same." *Id.* at 6. Finally, Meta informed the Magistrate that it had "advised Plaintiffs of the extensive deficiencies in [Car-Freshner's] responses to both Defendant's interrogatories and requests for production, including through the meet and confer process, which remains ongoing." *Id.* at 10.

Five days after submitting the Case Management Plan, on March 13, the parties continued their telephonic conferral regarding Plaintiffs' deficient discovery responses, negotiating for another two hours. *See* Dkt. No. 79-9 at 2. At the conclusion of the conferral, Meta expressed its belief that the conferral process was complete, but Plaintiffs responded that they would need two weeks to provide their positions in writing. In the interim, Judge Lovric entered the Uniform Pretrial Scheduling Order on March 15 (Dkt. No. 47, the "UPSO"), which set the venue motion deadline for May 14, 2024.

On March 26, Plaintiffs responded in writing to Meta's February 16 deficiency letter. *See* Dkt. No. 79-10. In that letter, Plaintiffs argued *for the first time* that forum-selection clause

7

discovery was unavailable because Meta is not "entitled" to file a second motion to transfer. *Id.* at 10. Plaintiffs offered to consider authorities to the contrary, so the same day, Meta responded via email that it had several avenues to potentially raise the forum-selection clause issue, including by requesting leave to renew its prior motion to transfer or through a motion under Federal Rule of Civil Procedure 54(b) or 60(b)(2).

Meta provided a further written response on April 19—addressing in detail the 45 requests still in dispute. Dkt. No. 79-9. On April 26, Plaintiffs promised to provide a response the following week. On April 30, the parties submitted status reports to the Magistrate. Meta's status report advised the Magistrate that Plaintiffs "have not yet produced any documents" and that "the parties have been meeting and conferring regarding Plaintiffs' deficient discovery responses," but "[i]f the parties cannot resolve any outstanding disputes, Meta will bring them to the Court's attention." Dkt. No. 66 at 2. Plaintiffs' status report advised the Magistrate that "Plaintiffs are reviewing and considering [Meta's] April 19 letter and are preparing a written reply. Thus, the meet-and-confer process continues for Plaintiffs' responses to the discovery demands Defendant has served to date." Dkt. No. 65 at 2-3. Plaintiffs also stated that they were "preparing to make a fulsome production to Meta." *Id.* at 3.

On May 8, Plaintiffs responded to Meta's April 19 letter, but omitted all forum-selection clause requests and did not provide any more discussions, clarifications, or compromises. *See* Dkt. No. 79-11. Plaintiffs then made their first document production on May 22, 2024 (more than a week after the venue motion deadline), and that production did not contain any documents responsive to Meta's forum-selection clause discovery requests. Accordingly, Meta began preparing a motion to compel.

On June 13, Meta filed a motion to compel that covered *twenty-nine* disputed discovery

requests. Dkt. No. 79. That same day, the Magistrate ordered the parties to confer further and
ordered Plaintiffs to file a response by June 28. Dkt. No. 80. Through subsequent conferrals, the
parties were able to resolve just two of the twenty-nine disputed requests. In their June 28
response to Meta's motion to compel, Plaintiffs stated that the venue motion deadline in the
UPSO expired on May 14, 2024 and argued that "[b]ecause any venue motion Meta could make
in this action would be defective as untimely, discovery concerning venue would not be relevant
to any party's claim or defense in this action." Dkt. No. 82 at 4.

 The Local Rules did not permit Meta a reply, but during the July 8 hearing on Meta's
motion to compel, Meta explained:

> Another . . . procedural argument they raise as to why forum selection clause
> issues should go out of the case is that the court's scheduling order had a deadline
> for moving to transfer. Well, obviously the reason we're here is that the plaintiffs
> have been refusing to give us the discovery that would allow us to renew our
> motion or seek reconsideration, and very conveniently did so beyond the time of
> the deadline to file that motion, and therefore, if we get the discovery, and it
> shows the evidence we believe it will, which will support our forum selection
> clause defense, we would move to amend the scheduling order and we would
> have good cause because the good cause would be we now have the discovery, we
> didn't have it before the deadline and so now is the time to bring the motion. So
> the mere fact that there was an initial deadline to file those motions shouldn't
> preclude us from seeking the discovery at this time.

Declaration of H. Forrest Flemming ("Flemming Decl.") Exhibit 1 (July 8 Hearing Tr. 15:2-17).

 The Magistrate later quoted from the UPSO that deadlines would only be extended with
"good cause," and Meta responded: "[W]e would be moving under the portion of the order that
specifically says it can be modified for good cause, and the good cause here is, we served
requests, they've stonewalled us by not giving us the information but once we get it . . . Once we
have it, we have good cause." *Id.* at 22:19-23.

 The Magistrate responded: "[L]et me tell you something about how this works. . . . If you

want an extension, you make it before the deadline expires." *Id.* at 23:2-6. The Magistrate

continued: "Good cause includes why you failed to ask for the extension of the deadline. I've not

heard anything today, I've not heard anything thus far other than you're waiting for discovery. If

that were the case, every one of my deadlines would be meaningless." *Id.* at 24:2-6. The

Magistrate concluded that "venue is gone, it's done" and denied Meta's motion to compel as to

all forum-selection clause requests. *Id.* at 24:21.

One week later, Meta requested a conference with the Magistrate concerning an

anticipated motion to modify the UPSO and for reconsideration of the Magistrate's July 8 denial

of Meta's motion to compel responses to discovery requests concerning forum-selection clause

issues. Meta's letter explained:

> In the context of Rule 16(b)'s "good cause" standard . . . Meta should not be
> faulted for waiting until it received the necessary discovery before moving to
> modify the [UPSO]. Solely because of Plaintiffs' refusal to comply with any
> forum-selection clause discovery, Meta did not—and today, still does not—have
> the necessary facts or information that would support a request to renew its
> motion to transfer (or a motion for reconsideration or Rule 60(b)(2) motion).
>
> In such situations, "many courts have declined to find 'good cause' to modify a
> scheduling order where the request is premature or otherwise filed in anticipation
> of hypothetical future events." *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-
> 02746-PHX-DWL, 2021 WL 1947515, at *1 (D. Ariz. May 14, 2021) (collecting
> cases). That is because "good cause requires a showing of new information, not a
> lack of information." *Knoll, Inc. v. Moderno, Inc.*, 2012 WL 3613896, at *4
> (S.D.N.Y. Aug. 22, 2012); *see also Mason Tenders Dist. Council of Greater New
> York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 37-38 (S.D.N.Y. 2016) (finding
> that it "would have been premature" for party to seek to modify schedule before
> the relevant "deposition" and before "the numerous discovery disputes" had been
> resolved). Because these cases and numerous others have held that a party cannot
> show good cause to modify a case schedule based on a hypothetical future motion
> or a lack of evidence, Meta believed it could not have brought a successful Rule
> 16(b) motion prior to the expiration of the venue deadline.
>
> In Meta's forthcoming motion, Meta will "demonstrate[] that [it was] diligent in
> both attempting to obtain the disputed documents directly from [Plaintiffs], and in
> pursuing the matter with the Court once the issue was ripe." *Trott v. Deutsche
> Bank, AG*, No. 20 CIV.10299 (DEH), 2024 WL 1994342, at *1 (S.D.N.Y. May 6,

2024).

Dkt. No. 88 at 2.

Meta further explained that rather than modifying the UPSO based on an absence of evidence, the Magistrate could defer ruling on the good cause issue, order Plaintiffs to comply with the relevant discovery, and consider whether to modify the UPSO *if* Meta later wishes to bring another venue motion and submits a motion attempting to establish good cause. *Id.*

Upon receipt of Meta's letter, the Magistrate set a conference for July 19. During that conference, the Magistrate denied Meta leave to file a written motion and denied Meta's anticipated motion on the merits. The Magistrate concluded that Meta could not show good cause to modify the venue motion deadline because, again, Meta had not moved for modification *before* the deadline expired. In the Magistrate's words, "Meta decided to ignore my court order." Flemming Decl. Exhibit 2 (July 19 Hearing Tr. at 12:2-5). "Meta could have in this case . . . brought to the court's attention the discovery issues and why you would[] perhaps need a little more time to decide to make or not make that venue motion." *Id.* at 13:21-24. Instead, "you did it your way and now you pay the consequences for doing it your way." *Id.* at 14:15-18.

The Magistrate concluded: "I'm just not impressed, [counsel]. Meta is not some mom and pop office down the road. You have more attorneys than god, and here you are telling me all the reasons why you couldn't do this, you couldn't do that and why you need more time. I'm just underwhelmed by this whole approach." *Id.* at 14:23–15:3. "I've heard nothing even closely resembling good cause to reopen [the venue motion] deadline. . . . I find no good cause to do that other than Meta just ignored my order." *Id.* at 21:18-25.

### III.   LEGAL STANDARDS

Federal Rule of Civil Procedure 72(a) provides: "A party may serve and file objections to [a magistrate's] order [on a non-dispositive matter] within 14 days after being served with a

11

copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Under Local Rule 60.1, "[a] motion for reconsideration of a Magistrate Judge's determination of a non-dispositive matter shall toll the fourteen (14) day time period to file objections pursuant to L.R. 72.1(b)."

A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed*." United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (quotation and citation omitted).

## IV.   ARGUMENT

### A.  The First Ruling Was Clearly Erroneous

The First Ruling denying venue-related discovery was clearly erroneous because the passage of the venue motion deadline did not *permanently* remove that issue from the case.

It is undisputed that Meta timely raised a forum-selection clause defense in its first responsive pleading. It is also undisputed that Meta timely served discovery relevant to that defense—six months before the venue motion deadline—and, in multiple instances, advised the Magistrate that discovery on the defense might lead to a renewed motion to transfer. Dkt. No. 45 at 3-4, 10. And yet the Magistrate denied Meta's motion to compel forum-selection clause discovery for the sole reason that, in the interim, the venue motion deadline expired. The Magistrate held that the expiration of that deadline meant that "venue is gone, it's done."

This ruling was clearly erroneous for two related reasons. First, the expiration of the venue motion deadline meant one thing: if Meta wanted to bring a venue motion later in the case, Meta would need to show good cause to modify the deadline. Put another way, at the time the Magistrate issued the First Ruling, Meta was still permitted by the UPSO and Rule 16(b)(4) to

seek modification of the venue motion deadline if the discovery Plaintiffs were withholding contained actionable evidence. The Magistrate has acknowledged as much in at least one previous opinion. *See Kotler v. Bosco*, 2019 WL 12291097, at *3 (N.D.N.Y. Nov. 4, 2019) (Lovric, M.J.) ("A plaintiff may establish 'good cause' if the proposed amendment 'rests on information that was not available prior to the deadline to amend the pleadings.'" (citation omitted)).

Second, the Magistrate expressly ruled on an issue that was not before the Court and not ripe for consideration: *i.e.*, whether Meta could *ever* show good cause to modify the venue motion deadline. *See Endurance Am. Ins. Co. v. DiStefano*, No. 1:20-CV-0203 (LEK), 2021 WL 3089127, at *2 (N.D.N.Y. July 22, 2021) ("The ripeness doctrine prevents the premature adjudication of issues that may never arise."). The First Ruling therefore prospectively denied any hypothetical Rule 16(b)(4) motion that Meta might file in the future. This was clear error.

Case law confirms the erroneous nature of the First Ruling. In *Morgan v. Gusman*, No. CIV.A. 06-5700, 2010 WL 1936215 (E.D. La. May 12, 2010), the plaintiff served discovery concerning the defendant's alleged qualified immunity. *Id.* at *3-4. The defendant responded that qualified immunity discovery would be "irrelevant and futile" because the deadline to amend pleadings had passed, and the plaintiff therefore had lost the chance to cure deficiencies in its complaint related to qualified immunity. The court rejected defendant's argument for the simple reason that the plaintiff could later seek to amend its complaint:

> [T]he liberal parameters of Fed. R. Civ. P. 15 would require the Court to consider a motion to amend, even if presented beyond the Court's scheduling deadline. The Court's scheduling order itself allows for the possibility of extending the deadlines and cut-offs by order of the Court on good cause shown.

*Id.* at 4. Here, the passage of the venue motion deadline could not serve as the sole basis for denying Meta' motion to compel because, as in *Morgan v. Gusman*, the UPSO provides that

deadlines may be modified upon a showing of "good cause."

The Fifth Circuit confronted a similar situation in *Innova Hospital San Antonio, Ltd.*

*P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719 (5th Cir. 2018). In that case,

the defendants successfully moved to dismiss the plaintiff's claims because "the complaint did

not include the plan language at issue." *Id.* at 730. The defendants "then used the dismissal order

as a basis for refusing to produce plan documents during the time the district court gave [the

plaintiff] an opportunity to amend." *Id.* The Fifth Circuit held that even though the plaintiff never

moved to compel on that issue, the plaintiff's amendment deadline should have been extended.

The Fifth Circuit further explained that the defendants' conduct—*i.e.*, resisting relevant

discovery while the schedule still permitted the plaintiff to seek amendment—was potentially

sanctionable because "[c]ounsel have an obligation, as officers of the court, to assist in the

discovery process by making diligent, good-faith responses to legitimate discovery requests." *Id.*

at 730 n.9.

Thus, for the additional reasons provided in *Innova Hospital*, the First Ruling leaves a

"definite and firm conviction that a mistake has been committed." *See Anderson v. City of*

*Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Plaintiffs

engaged in misconduct by refusing to comply with any forum-selection clause discovery before

the venue motion deadline was even set, and then before the deadline expired. The First Ruling

rewarded this misconduct while punishing Meta for taking the time necessary to conduct the

meet-and-confer process in good faith. The ruling also effectively denied Meta *any* discovery on

its forum-selection clause defense—error that is reversible on appeal. *See In re 650 Fifth Ave. &*

*Related Properties*, 934 F.3d 147, 157 (2d Cir. 2019) (finding that district court clearly erred in

denying motion to compel documents responsive to statute of limitations defense because "[a]

14

party must be afforded a meaningful opportunity to establish the facts necessary to support [its] claim").

Accordingly, the First Ruling was clearly erroneous, and the Court should modify it to compel Plaintiffs to comply with the forum-selection clause discovery served by Meta.

## B.  The Second Ruling Was Clearly Erroneous

The Second Ruling denying modification of the venue motion deadline was clearly erroneous. The Magistrate found that good cause to modify the venue motion deadline did not exist for only one reason: Meta had not moved to modify the deadline before it passed. But this was clearly erroneous because a party is not required to—and should not—move to modify a motion deadline based on a hypothetical future motion. Instead, Meta's diligence in timely serving forum-selection clause discovery, pursuing that discovery despite Plaintiffs' stonewalling, and immediately moving to modify the UPSO (even after the venue motion deadline) is all that is required to show "good cause" under Rule 16(b)(4). *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (holding that "good cause" depends on the "diligence of the moving party").

### 1.    The Law Does Not Require a Party to Move to Modify a Deadline Prior to Its Expiration in Order to Show Diligence

To show diligence under Rule 16(b)(4), a party is not required to move to modify a motion deadline prior to its expiration. As this Court and many others have held, when a motion is based on facts learned in discovery, the diligence analysis turns on whether the moving party was diligent in pursuing the discovery and in bringing a Rule 16(b)(4) motion within a reasonable time after receiving the discovery. For example, in *Veeder v. Nutting*, this Court found that the plaintiffs "acted diligently in filing their proposed amended complaint" because they "learned of . . . necessary facts during the course of discovery and filed their motion to

15

amend their complaint" *after* the amendment deadline expired but "within a reasonable time after

discovering these facts." *Id.*, No. 1:10-CV-00665 MAD, 2012 WL 1416266, at *6 (N.D.N.Y.

Apr. 24, 2012) (D'Agostino, J.).

      For further example, this Court has often cited, in *Veeder* and in many other opinions, the

Eastern District's opinion in *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527 (E.D.N.Y.

2010). The court in that case permitted plaintiff Enzymotec to file a motion to amend its

complaint "more than nine months past the deadline." *Id.* at 536. The court explained:

> Although Enzymotec may have suspected prior to filing the Initial Complaint that
> [defendant] NBTY breached the February 2006 Agreement or any subsequent
> renewals of that agreement, causes of action in a complaint must be based on
> factual allegations, not factual speculation. Insofar as NBTY does not contest that
> Enzymotec learned of the alleged breaches of the February 2006 Agreement
> during the course of discovery, the Court is satisfied that . . . good cause exists to
> permit an extension of that deadline.

*Id.* at 537.

      Here, Meta "may have suspected" that Plaintiffs had evidence potentially warranting a

second venue motion. *See id.* But because Meta could only obtain that evidence through

discovery (which Plaintiffs, without justification, refused to provide), the passage of the venue

motion deadline while Meta was diligently pursuing that discovery should not weigh against

Meta's showing of good cause. *See Ruel v. McGrath*, No. 1:12-CV-417 (LEK/RFT), 2013 WL

12130427, at *4 (N.D.N.Y. June 21, 2013) (holding that a party is diligent when it has

"employed [its] time conducting discovery and investigation," and when it has done so, a

"request [to modify the UPSO] should be favorably received").

      Numerous courts in this District have reached the same conclusions as this Court in

*Veeder* and the Eastern District in *Enzymotec*, where the Rule 16(b)(4) motion is brought after

the relevant deadline has passed. For example, in *Robinson v. Town of Colonie*, the court

modified an expired deadline because the plaintiffs "demonstrated why they reasonably could not have met the original deadline for making an application to amend their complaint despite their diligence," i.e., the plaintiffs only "realized that they had confused the identities" of certain police officers during "depositions of the officers" taken after the expiration of the deadline. *Id.*, No. 91-CV-1355, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993). In *Syntek Cap., AG v. Welch*, the court modified a deadline that had expired three months earlier, finding "good cause exists for that delay and for extending the deadline for joinder of parties" because the defendants "lacked sufficient grounds to assert a third-party claim . . . until defendants received [plaintiff's] responses to interrogatories, which occurred shortly before defendants initiated proceedings for this motion." *Id.*, No. 05-CV-180 (GLS/DRH), 2006 WL 8452013, at *2–3 (N.D.N.Y. Feb. 16, 2006).

Accordingly, the Magistrate's ruling that Meta was required to file a Rule 16(b)(4) motion prior to its expiration—before receiving the necessary discovery—was clearly erroneous.

## 2.  The Law Prohibits Parties From Moving Under Rule 16(b)(4) Based on Hypothetical, Future Motions

Not only are parties not required to move for modification of a deadline prior to its expiration in order to show diligence; but when the basis for the proposed modification is a hypothetical future motion, parties are unable to do so because "good cause" will be lacking. In *Wandering Dago Inc. v. New York State Off. of Gen. Servs.*, for example, the plaintiff moved to extend an amendment deadline five days prior to its expiration "based upon an asserted need for further discovery." *Id.*, 2014 WL 12797920, at *2 (N.D.N.Y. July 28, 2014) (Treece, M.J.). "The Court denied this Request by noting that the completion of more discovery did not serve as good cause to amend the deadline, but also informed the litigants that 'the passage of these

deadlines would not foreclose Plaintiff from seeking to amend, [however], the burden [of said motion would be] elevated to good cause shown.'" *Id.*

Like Magistrate Judge Treece in *Wandering Dago*, "many courts" have "declined to find 'good cause' to modify a scheduling order where the request is premature or otherwise filed in anticipation of hypothetical future events." *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 1947515, at *1 (D. Ariz. May 14, 2021). For example, in *Knoll, Inc. v. Moderno, Inc.*, the defendants sought to modify a deadline in advance of its expiration because they were "still waiting for Plaintiff to produce additional information that would shed more light on this issue." 2012 WL 3613896, at *4 (S.D.N.Y. Aug. 22, 2012). In other words, the defendants there did exactly what the Magistrate told Meta it should have done in this case. But the court in *Knoll* denied the motion as premature, holding that "good cause requires a showing of new information, not a lack of information." *Id.*; *accord UB Found. Activities, Inc. v. IT Healthtrack, Inc.*, No. 04-CV-443S(F), 2009 WL 4042937, at *6 (W.D.N.Y. Nov. 19, 2009) ("Based on its analysis of the principal discovery dispute raised by Defendants' motion, the court finds Defendants' request to amend the Amended Scheduling Order to be premature at this time."); *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 37-38 (S.D.N.Y. 2016) (finding that it "would have been premature" for party to seek to modify schedule before the relevant "deposition" and before "the numerous discovery disputes" had been resolved); *Sight Scis., Inc. v. Ivantis, Inc.*, 2023 WL 7458354, at *7 (D. Del. July 3, 2023) (denying preemptive motion to modify scheduling order as "not ripe" and "speculative"); *Palomino v. O'Leary*, 2010 WL 3025582, at *3 (N.D. Ill. July 29, 2010) (denying motion to extend joinder deadline because the plaintiff was not prepared to file a joinder motion, but informing plaintiff that it could later seek leave to file a joinder motion for good cause).

18

In addition to denying the types of premature motions the Magistrate retroactively required of Meta, courts have also expressly endorsed the procedure Meta followed here. For example, in *Syntek*, the court found that "it was not unreasonable for defendants to seek resolution or clarification of the insurance issue, which they did without unreasonable delay, before proceeding to [move to] add additional parties." *Id.*, 2006 WL 8452013, at *2 (N.D.N.Y. Feb. 16, 2006). Similarly, in *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *11 (E.D.N.Y. Mar. 26, 2010), the court rejected the plaintiff's argument that the defendant should have moved for modification sooner: "That Glenmark preferred to have additional discovery before drafting its amended pleading is entirely understandable, and a three-month delay does not qualify as 'extremely belated . . . .'" *Id.*; *see also Erdogan v. Nassau Cnty.*, No. 10-CV-05837 AKT, 2014 WL 1236679, at *7 (E.D.N.Y. Mar. 25, 2014) (finding that the plaintiff could not have filed a motion to modify the schedule "based on evidence unavailable and unknowable" prior to receiving relevant discovery); *Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 2020 WL 13605451, at *2 (D. Mass. Dec. 22, 2020) (first granting motion to compel and then, when subsequent discovery revealed new facts, finding good cause to modify scheduling order).

### 3.    Meta Clearly Established Diligence in Pursuing Its Forum-Selection Clause Defense

Meta clearly established diligence in timely serving and pursuing forum-selection clause discovery, and promptly moving to modify the UPSO upon the Magistrate's denial of Meta's motion to compel such discovery. Such conduct is sufficient to establish "good cause" under

Rule 16(b)(4).[1] *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007)

(holding that "good cause" depends on the "diligence of the moving party"). To the extent the

Magistrate requires Rule 16(b)(4) motions to be filed before the respective deadlines expire to

show good cause, imposing such a requirement would constitute clear error here because this

expectation was disclosed to Meta only when it was already too late to comply with it.  Good

cause expects *diligence*, not *perfection,* and Meta promptly moved to modify the UPSO upon

learning of the Magistrate's expectation that Rule 16(b)(4) motions are to be filed prior to the

respective deadlines.[2] *See Epic Tech, LLC v. Fusion Skill, Inc.*, No. 4:19-CV-02400, 2022 WL

463832, at *3 (S.D. Tex. Feb. 15, 2022) ("In a world of perfect lawyering, Defendants might

have followed up on the ET/SHFF relationship sooner by asking follow-up questions in

depositions and investigating the issue when first 'reminded' of the 'Lucky Duck Slots'

application. But diligence does not demand perfection.").

      Meta further established good cause by showing that, despite Meta's diligence, the venue

---

[1] Meta moved to modify the UPSO in light of the Magistrate's reason for denying Meta's motion to compel forum-selection clause discovery, but Meta appreciates the tension between the case law holding that good cause to modify a schedule cannot exist absent new evidence and Meta's request to modify the UPSO without such evidence. That is why Meta initially requested, in the alternative, that the Magistrate simply reconsider the First Ruling and defer ruling on the good cause issue until Meta brought a motion to modify the venue motion deadline (if any). That is also why Meta is asking this Court, in the alternative to modifying the Second Ruling to grant modification of the UPSO, to instead set aside the Second Ruling. In other words, if the Court finds that a motion to modify the venue motion deadline is still premature, the Court can still grant Meta relief by modifying the First Ruling to compel discovery and setting aside the Second Ruling.

[2] Meta should not be faulted for not knowing in advance the Magistrate's expectation.  Not only is such expectation contrary to the case law cited in section A - B. 2, supra, but the Magistrate has also modified deadlines after their expiration (albeit for an incarcerated pro se plaintiff). *See McClain v. Dugan*, No. 9:17-CV-46 (LEK/ML), 2019 WL 6330507, at *11 (N.D.N.Y. Oct. 28, 2019) (Lovric, M.J.) (finding pro se plaintiff's diligent "pursuit of [relevant] information" in discovery, coupled with the defendant's misleading discovery responses, constituted "good cause" to modify a deadline after it had passed).

motion could not have been met because of Plaintiffs' unjustified refusal to comply with any discovery requests relevant to Meta's forum-selection clause defense.

Where, as here, the non-moving party's discovery misconduct is to blame for the moving party's inability to meet a relevant deadline, justice requires modification of the deadline. Indeed, it is an "abuse of discretion to deny [a] motion to modify [a] scheduling order" when the non-moving party has delayed in complying with its discovery obligations. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 (9th Cir. 2007). Because the Second Ruling held that Meta was required to file a Rule 16(b)(4) motion before receiving Plaintiffs' discovery responses, the ruling was clearly erroneous. As one court explained:

> This Court will not allow Defendants to benefit [from] their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses. A timely response likely would have avoided the present controversy in that the information would have been gathered earlier, prompting an earlier attempt to amend.

*Stewart v. Coyne Textile Servs.*, 212 F.R.D. 494, 497 (S.D.W. Va. 2003); *see also Simon Prop. Grp., L.P. v. mySimon, Inc.*, 2003 WL 1807135, at *11 (S.D. Ind. Mar. 26, 2003) (rejecting plaintiff SPG's argument that the production of a document should have enabled defendant mySimon to file an earlier motion for new trial, because SPG should have disclosed the relevant information "several months" earlier during discovery: "[C]oming from SPG and its lawyers— who recognized the importance of the McKinsey documents and failed to produce them—the argument that mySimon's lawyers should have realized the extent of the concealment [and moved for relief earlier] leaves an awfully sour taste in the mouth.").

Here, had Plaintiffs complied with their discovery obligations, Meta would have had several months to conduct relevant depositions and prepare another venue motion (if any). But because of the Second Ruling, Meta has been denied discovery on its forum-selection clause

defense, and denied an opportunity to vindicate its contractual rights, based on a technicality. This is clear error. *See Meador v. Albanese L. Off.*, 2009 WL 10722258, at *2 (N.D.N.Y. Sept. 2, 2009) (modifying schedule "in recognition of the desirability of having litigated matters resolved based upon relative merit rather than on a the [sic] basis of a procedural or technical default").

## V.   CONCLUSION

Meta seeks to vindicate its contractual right to enforce its forum-selection clauses. Meta timely asserted its forum-selection clause defense and has diligently pursued discovery on that issue. The clearly erroneous First and Second Rulings have effectively—and unjustly—deprived Meta of its ability to vindicate its contractual rights and to pursue its defense. Meta therefore respectfully requests that the Court modify the First Ruling to compel Plaintiffs to comply with all appropriate forum-selection clause discovery, and either set aside the Second Ruling entirely, or modify it to grant Meta's request for an extension of the deadline to file venue motions to thirty days after Plaintiffs' compliance with such discovery.

Respectfully submitted,

/s/ *H. Forrest Flemming, III*
KILPATRICK TOWNSEND & STOCKTON LLP

William H. Brewster (520585)
R. Charles Henn Jr. (703461)
H. Forrest Flemming, III (703406)

The Grace Building
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email:  bbrewster@kilpatricktownsend.com
        chenn@kilpatricktownsend.com
        fflemming@kilpatricktownsend.com

*Attorneys for Defendant*

**KILPATRICK TOWNSEND & STOCKTON LLP**

William H. Brewster
R Charles Henn Jr.
H. Forrest Flemming, III

The Grace Building
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAR-FRESHNER CORPORATION and JULIUS SÄMANN LTD., <br><br> *Plaintiffs*, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> *Defendant*. | No. 5:22-cv-1305 (MAD/ML) |
| META PLATFORMS, INC., <br><br> *Counterclaim-Plaintiff*, <br><br> v. <br><br> JULIUS SÄMANN LTD., <br><br> *Counterclaim-Defendant*. | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, a true and correct copy of the foregoing was

served on counsel for Plaintiffs via ECF as follows:

23

Louis Orbach (507815)
Liza R. Magley (519849)
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Emails: lorbach@bsk.com; lmagley@bsk.com

/s/ H. Forrest Flemming, III
William H. Brewster
Kilpatrick Townsend & Stockton LLP
*Attorney for Defendant*